300 Ga. 648
FINAL COPY

S17Y0668.  IN THE MATTER OF SHANNON BRILEY-HOLMES.

PER CURIAM.

This disciplinary matter is before the Court on the petition for voluntary discipline filed by Respondent Shannon Briley-Holmes (State Bar No. 447679), before the filing of a formal complaint by the State Bar, see Bar Rule 4-227 (b) (2). Briley-Holmes, who became a member of the Bar in 2010, seeks the imposition of a one-year suspension with conditions for reinstatement for her admitted violations of Rules 1.3, 1.4, and 1.16 (d) of the Georgia Rules of Professional Conduct, see Bar Rule 4-102 (d), related to her conduct in the course of representation of seven clients — two of which have been considered by the State Disciplinary Board ("SDB") for probable cause determination.

In her petition, Briley-Holmes admits with regard to SDB Docket No. 6844 that on or around June 2013, she agreed to represent a client, whom she met through her previous employment, pro bono in a civil service appeal challenging his dismissal from the Atlanta Police Department. She admits that she was unsuccessful in the appeal process and agreed to pursue the next step,

a petition for writ of certiorari to the Superior Court, but that she failed to file the petition before leaving on vacation; she instructed the client on how to file the petition, but mistakenly calendared the deadline after it had expired, and, as a result, the court dismissed the petition with prejudice. Briley-Holmes further admits that the client then paid her $2,000 to pursue an appeal to this Court, and she filed the notice of appeal and began work on it, but the representation ended before anything else was filed. Finally, she admits, that while the civil service matter was pending, the client's "P.O.S.T. certification" was revoked; she agreed to represent him in an effort to restore the certification for a fee of $750, plus filing fees; he paid approximately $600, and she filed the paperwork necessary to obtain a hearing, including a filing fee of $150; the client requested that she accept payment of the balance he owed on the certification process from the $2,000 he had paid for the civil service case, but she declined; and the P.O.S.T. case was ultimately dismissed after they missed a hearing on the matter. She admits that she violated Rule 1.3 by failing to timely perfect the client's petition for writ of certiorari, causing it to be dismissed with prejudice, and for missing a scheduled hearing in the P.O.S.T. case and causing it to be dismissed, although she notes that she was able to get the P.O.S.T. case

2

reinstated before the client ended her representation.

As to SDB Docket No. 6814, Briley-Holmes admits that a client contacted her in November 2015 about possible representation to petition what the client believed was an unwarranted disciplinary action proposed to be taken against her son by his high school. Briley-Holmes admits that the client paid her a $3,000 flat fee; she then contacted the school and executed a Family Educational Rights and Privacy Act, 20 USC § 1232g (FERPA) release of information form as directed by the school's counsel; the client raised specific concerns about her son's circumstances with her on more than one occasion, but Briley-Holmes told her that there was little she could do until the information she had requested in the FERPA form was sent to her; the client terminated her representation soon thereafter; and Briley-Holmes failed to give the client any refund upon being discharged. She admits that she violated Rule 1.16 when, after being terminated, she failed to return the fees paid that she had not earned.

Next, Briley-Holmes admits that in June 2015 the family of a client paid $1,500 of the agreed upon flat fee of $2,500 for representation in a criminal case by her and co-counsel; she promptly visited the client in prison to discuss his case and filed an entry of appearance and preliminary motions, but after that she

3

never visited him again, and she had great difficulty communicating with his family because they did not speak English; she attended the first calendar call of the case, and co-counsel was supposed to attend the second calendar call but failed to do so and did not inform her or the court in advance; and, after the fifth missed court date, the client's family terminated their representation. Briley-Holmes asserts that, at the time, her law partner, who has since been disbarred,[1] had begun acting in an irrational and destructive manner, including cutting off her cell phone, which was on a business plan with their firm, and terminating her access to their online case management database, making it difficult to communicate with the client and his family. Briley-Holmes admits that she violated Rule 1.3 when she failed to attend scheduled court appearances and failed to ensure that all necessary actions in the client's case were taken either by her or co-counsel.

In addition, Briley-Holmes admits that in June 2015, a client paid her $750 to represent him in pre-warrant issuance matters and to attend a pre-warrant issuance hearing (although she later discovered that there was no

---

[1] See In the Matter of Wright, 299 Ga. 139 (786 SE2d 686) (2016).

4

hearing). Briley-Holmes admits that she advised the client of his Fifth Amendment right to silence and asked him to not make any statements to law enforcement without her being present, but failed to communicate with him about the risks of not arranging for an interview with law enforcement. She admits that she attempted to reach the detective (and she understands he tried to reach her as well), but she did not follow through and arrange an interview, and the client ultimately was arrested because he failed to arrange an interview voluntarily. She further admits that she immediately filed an entry of appearance on his behalf, a motion for bond, and all preliminary motions associated with representation in a criminal case, even though it was outside her original scope of representation, but when she attended the bond hearing, it was made clear to her that her client had hired new counsel. Briley-Holmes admits that she violated Rule 1.3 by failing to arrange an interview with law enforcement, causing her client's arrest and a period of incarceration, and that she violated Rule 1.4 when she failed to communicate with him about the risks of not arranging for an interview with law enforcement.

Briley-Holmes further admits that in September 2015, she received a $1,500 retainer to represent a client in obtaining a temporary protective order

5

(TPO) and divorce; she prepared the initiating documents, attended the TPO hearing and obtained the TPO; a future hearing was then set on whether to convert the TPO to a 12-month order; and she then worked out an oral agreement with opposing counsel whereby his client would consent to a 12-month order. Briley-Holmes admits that she notified her client of the agreement and its terms and told her it was unnecessary to attend the hearing on the TPO, but she did not notify the court that an agreement had been reached because opposing counsel informed her that his client would submit it to the court. She further admits that she followed up by e-mail with opposing counsel to ensure that the agreement was signed and called the State Bar ethics hotline to make sure that the agreement was proper and that she behaved reasonably, but that opposing counsel did not submit the agreement or notify the court of the agreement because her client's husband refused to consummate it, asserting a material change in circumstances involving their son's behavior, and the court dismissed the protective order for failure to appear and her client was upset and terminated her representation. She admits that she violated Rule 1.3 when, without having a written agreement and relying on opposing counsel's word, she told her client not to appear at the protective order hearing, did not appear

6

herself, did not notify the court of the oral settlement agreement, and failed to follow up to assure that a written agreement was sent to the court.

Briley-Holmes next admits that in January 2016, a client retained her to represent her in seeking a child custody modification order and paid her a flat fee of $4,200; she planned to attend a scheduled hearing but was unable to after she got into an automobile accident on the way to court; she had her assistant call the court and discovered the hearing had been continued; and she spoke to her client and told her that she would be sending her a verification form that evening for the modification action and a financial affidavit, but the client did not receive them; and when she sent a draft modification petition to her client two days later, her client sent her an e-mail and a text terminating her services. She admits that she failed to immediately refund any of her client's fee, although she claims she did attempt to refund the client's credit card, but the client filed a dispute on her credit card and the payment did not go through. She admits that she violated Rule 1.16 (d) when she failed to promptly refund unearned fees after her client terminated the representation.

Finally, Briley-Holmes admits that in April 2016, a client retained her to seek emergency temporary custody to protect her son and paid her a flat fee of

$2,500; she exchanged numerous e-mails and phone conversations with the client and drafted a petition for modification and emergency petition, which the client signed and had notarized; the client then accompanied her to the courthouse to file the documents in the hopes that a judge would be on duty to hear the emergency ex parte petition she drafted; however, no judge was available to consider the request; and, over the following weekend, the client changed her mind about proceeding with the case. Briley-Holmes states that she did not refund the full $2,500 fee because she felt that the work she had done before termination justified her keeping the full amount paid for legal services. However, the client filed a fee arbitration case with the State Bar, and Briley-Holmes has agreed as part of the petition for voluntary discipline to pay any award in full and admits that she violated Rule 1.16 in failing to promptly refund unearned fees when her client terminated the representation.

In mitigation of discipline, Briley-Holmes provides a statement of remorse, see American Bar Association Standards for Imposing Lawyer Sanctions Standard 9.32 (l), and states that she has been introspective about the series of events and issues that brought her to this point and that she has been working on bettering herself and her circumstances so that neither she, nor

another client, is in this position again.  As to SDB Docket No. 6844, she states that she feels a great deal of regret over  the way the case was handled and that, at the time that she was approached to take on the case pro bono, she was working full time and the case became overwhelming because she had to request time off of work and take away time from her children, and she should have known her own limitations. Briley-Holmes further states that she has jumped too quickly into large battles and projects without being able to adequately handle all of her clients who depend on her, and she has struggled to effectively set certain boundaries, expectations, and to convey a certain professionalism that encourages confidence in her abilities as an attorney. She asserts that she has a proven history of strong court performance and doing the work necessary in cases, but there is a breakdown in how she is conveying this work to her clients that causes them to panic, question her ability, and to ultimately get new counsel and, in retrospect, she has realized that she should have hired a full-time assistant and set up a brick-and-mortar office to help alleviate any sense of chaos involved in her operations and to establish boundaries and a clearer, more streamlined communication system with clients.  She also states that during this time period she was dealing with a multitude of stress from her job and family

9

life, including trouble in her marriage that led to her divorce and a former law partner who was addicted to drugs and alcohol and was not operating at full capacity, see ABA Standard 9.32 (c).

In further mitigation, Briley-Holmes states that she did not have a selfish motive in her representation, see ABA Standard 9.32 (b); she has made a timely good faith effort to make restitution and rectify consequences of her misconduct, see ABA Standard 9.32 (d), including agreeing to pay any award from fee arbitration and handing over her clients' files to new counsel; and she has been honest and open with all aspects of her representation of her clients and will fully cooperate with all disciplinary proceedings, see ABA Standard 9.32 (e). Finally, she states that, before the imposition of any discipline in these matters, she independently determined that she needed to leave the practice of law for a substantial period of time and has not represented a client since September 2016.

As discipline, Briley-Holmes seeks a suspension of her license to practice law for one year and that her reinstatement to practice law be conditioned on: (1) submitting to the jurisdiction of the State Bar's Fee Arbitration Program with respect to all fee arbitration petitions already filed or filed in the future against her, taking the initiative to submit to the program any remaining fee disputes by

her clients, and paying in full any fee arbitration award; and (2) receiving the services offered by the Law Practice Management Program of the State Bar and waiving confidentiality to the extent of permitting that program to report to the State Bar's Office of General Counsel that she has received those services.

The State Bar has responded, agreeing with the facts and the mitigating factors set out by Briley-Holmes, although it notes that she has only refunded one of her clients, and also states in aggravation of the level of discipline that Briley-Holmes received a formal admonition in 2014,[2] see ABA Standard 9.22 (a); she has engaged in a pattern of misconduct and that her misconduct encompasses multiple offenses, as is obvious in these seven cases, see ABA Standards 9.22 (c) and 9.22 (d); and the client she was hired to represent in the criminal case she references in her petition was a vulnerable victim, given he was incarcerated and neither he nor his family could communicate in English, see ABA Standard 9.22 (h). Nevertheless, the State Bar recommends that this Court accept Briley-Holmes' petition because it believes that a one-year suspension with conditions for reinstatement as specified in her petition would

---

[2] The State Bar does not specify the reason for the formal admonition.

be an appropriate discipline for her conduct, as a penalty to her, a deterrent to others, and an indication to laymen that the courts will maintain the ethics of the profession. See In the Matter of Ricks, 289 Ga. 136 (710 SE 2d 749) (2011).

Having reviewed the record as a whole, we disagree with Briley-Holmes' petition and the State Bar's recommendation that a one-year suspension with conditions is an appropriate sanction in this matter. See In the Matter of Hentz, 300 Ga. 413 (794 SE2d 649) (2016); In the Matter of Polk, 295 Ga. 215 (758 SE2d 830) (2014). Accordingly, this Court rejects Briley-Holmes' petition for voluntary discipline.

Petition for voluntary discipline rejected. All the Justices concur.


Decided February 27, 2017.

Petition for voluntary discipline.

Kenneth B. Hodges III, for Briley-Holmes.

Paula J. Frederick, General Counsel State Bar, William J. Cobb, Assistant General Counsel State Bar, for State Bar of Georgia.