304 Ga. 199
FINAL COPY

S18Y0717. IN THE MATTER OF SHANNON BRILEY-HOLMES.

PER CURIAM.

This Court rejected the first petition for voluntary discipline of Shannon Briley-Holmes (State Bar No. 447679), which sought a one-year suspension with conditions on reinstatement for her admitted violations of the disciplinary rules in representing seven clients. See In the Matter of Briley-Holmes, 300 Ga. 648 (797 SE2d 123) (2017). The State Bar then issued a formal complaint, and she filed a second petition for voluntary discipline, which she later amended. In her amended second petition, she admitted violating the disciplinary rules in representing 11 clients in unrelated matters over a period of almost three years. She requested a suspension ranging from two to five years with conditions on reinstatement but said that she would accept a more severe sanction. Special Master Margaret Gettle Washburn held a lengthy hearing, at which it was made clear that Briley-Holmes would accept disbarment as a sanction for her misconduct.

In a 68-page report and recommendation, the special master recommends that we accept the amended second petition and impose a five-year suspension with conditions on reinstatement, and neither the State Bar nor Briley-Holmes filed exceptions to the special master's report. However, as explained below, the appropriate sanction for Briley-Holmes's misconduct is disbarment. Because the record indicates that she is willing to accept disbarment, and because "[a] voluntary surrender of license is tantamount to disbarment," Bar Rule 4-110 (f), we construe her amended second petition as a petition for voluntary surrender of license, which we accept.

As recounted by the special master, Briley-Holmes has admitted the following facts. In approximately June 2013, Briley-Holmes agreed to represent the first client pro bono in a civil service appeal challenging his dismissal from the Atlanta Police Department. After losing that appeal, Briley-Holmes agreed to pursue the next step by filing a petition for certiorari in the Superior Court. However, she miscalendared the filing deadline, the petition was filed late, and the Superior Court dismissed the petition with prejudice. The client then paid Briley-Holmes $2,000 to pursue an appeal to this Court. She filed a notice of appeal and began work on the matter, but the representation ended before

2

anything else was filed. Meanwhile, the client's POST certification was revoked. Briley-Holmes agreed to represent him in an attempt to restore the certification for $750 plus filing fees. The client paid her approximately $600, and she filed the paperwork necessary to obtain a hearing, including a $150 filing fee. She declined the client's request to accept payment of the balance owed on the certification case from the $2,000 that the client had paid her to handle the appeal in the civil service case. Briley-Holmes missed a hearing in the certification case, resulting in the dismissal of that case. The special master concluded that Briley-Holmes violated Georgia Rule of Professional Conduct 1.3 by failing to timely file the petition for certiorari in the civil service case, which resulted in the dismissal of the petition, and by missing the scheduled hearing in the certification case, which resulted in the dismissal of that case.[1]

In March 2014, the second client hired Briley-Holmes to represent him in a child custody case. She initially communicated with the client, but after the client hired an investigator at her request, she failed to respond to the client's

---

[1] The Georgia Rules of Professional Conduct are set out in Bar Rule 4-102 (d). Rule 1.3 says, "A lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this Rule means that a lawyer shall not without just cause to the detriment of the client in effect wilfully abandon or wilfully disregard a legal matter entrusted to the lawyer. . . ." The maximum sanction for a single violation of Rule 1.3 is disbarment.

communications about this development. For a period of two months, Briley-Holmes failed to respond to more than one e-mail, text, or telephone call from the client about the case. She eventually e-mailed the client to let him know that the complaint was overnighted to a process service company in Florida, but she did not follow through with the case, and it was later dismissed. The special master concluded that Briley-Holmes violated Rule 1.3 by failing to follow through with the case, which caused it to be dismissed, and violated Rule 1.4 by failing to respond in a timely manner to the client's communications about the case.[2]

In July 2014, Briley-Holmes represented the third client in divorce proceedings. Under the final judgment and decree of divorce, Briley-Holmes was to complete a qualified domestic relations order (QDRO) for the ex-husband's 401 (k) account to be awarded to the client within 60 days. Briley-Holmes did not know how to prepare a QDRO and got assistance from opposing counsel. Briley-Holmes drafted a QDRO but did not timely forward it to her client or to opposing counsel. She then failed to respond to her client's e-mails

---

[2] Rule 1.4 says, "A lawyer shall . . . keep the client reasonably informed about the status of the matter [and] promptly comply with reasonable requests for information . . . ." The maximum sanction for a single violation of Rule 1.4 is a public reprimand.

for two years because she does not check the e-mail address that the client was using. The special master concluded that Briley-Holmes violated Rule 1.3 by not submitting the completed QDRO to opposing counsel and violated Rule 1.4 by failing to respond in a timely manner to the client's e-mails about the case.

In June 2015, the family of the fourth client hired Briley-Holmes and her law partner, Jennifer Wright, to represent the client in a criminal case.[3] Briley-Holmes promptly visited the client in prison in South Carolina for several hours and then filed an entry of appearance and preliminary motions. She never visited the client again and had great difficulty communicating with his family because they did not speak English. Briley-Holmes appeared at the first calendar call of the case. Wright was supposed to attend the second calendar call but failed to do so and did not inform Briley-Holmes or the court in advance. Briley-Holmes immediately notified the judge that she was sick on that day and unaware that Wright was not going to attend the calendar call. Neither Briley-Holmes nor Wright appeared at the next two calendar calls. During that time, Wright allegedly had begun acting in an irrational and

_____

[3] This Court disbarred Wright in 2016. See In the Matter of Wright, 299 Ga. 139 (786 SE2d 686) (2016).

5

destructive manner, doing such things as cutting off Briley-Holmes's cell phone on the law firm's business plan and terminating Briley-Holmes's access to the firm's online case management database. Neither Briley-Holmes nor Wright attended the fifth court date in the case, and the client's family terminated the representation. The special master concluded that Briley-Holmes violated Rule 1.3 by failing to attend scheduled court appearances and by failing to ensure that all necessary actions in the case were taken.

Also in June 2015, the fifth client hired Briley-Holmes to represent him in a criminal case in certain pre-warrant matters and to appear at a pre-warrant hearing, although Briley-Holmes later discovered that there was no such hearing because an assigned detective had taken over the case. Briley-Holmes advised the client of his Fifth Amendment right to remain silent and asked him not to make any statements to law enforcement without her being present. She tried to contact the assigned detective to set up an interview but did not reach him, and she understands that the detective tried to reach her as well, although she has no recollection of that fact. Briley-Holmes did not follow through and arrange an interview, which eventually resulted in the client's arrest. When Briley-Holmes learned of the arrest, she immediately filed an entry of

appearance, a motion for bond, and all preliminary motions associated with representation in a criminal case even though this work was outside the original scope of the representation. At the bond hearing, she learned that the client had hired new counsel. The special master concluded that Briley-Holmes violated Rule 1.3 by failing to arrange an interview with the detective, which resulted in her client's arrest and a period of incarceration.

In September 2015, Briley-Holmes received a $1,500 retainer to represent the sixth client in obtaining a temporary protective order (TPO) and a divorce. Briley-Holmes obtained the TPO, and a hearing was set on whether to convert the TPO to a 12-month order. However, the TPO was never served on the opposing party, and opposing counsel was going to move to dismiss the TPO on this ground. Shortly before the hearing date, Briley-Holmes and opposing counsel reached an oral agreement whereby opposing counsel's client would consent to a 12-month order. Although the agreement was not reduced to writing and executed, Briley-Holmes told her client on the day before the hearing that an agreement had been reached and that it was not necessary for the client to attend the hearing. Briley-Holmes did not notify the court that an agreement had been reached, as opposing counsel had agreed to obtain his

7

client's signature and submit the agreement to the court. Briley-Holmes sent a follow-up e-mail to opposing counsel and called the State Bar ethics hotline to make sure that the agreement was proper and that she had behaved reasonably. The opposing party refused to consummate the agreement, asserting a material change in circumstances involving the behavior of the parties' son, so opposing counsel never submitted the agreement to the court. Neither Briley-Holmes nor her client appeared at the hearing, and the court dismissed the TPO. The client was upset despite being told that it was her son's behavior that prevented consummation of the agreement, and the client terminated the representation. The special master concluded that Briley-Holmes violated Rule 1.3 when, without having a written agreement, she told her client not to appear at the hearing, did not appear herself, did not notify the court of the oral settlement, and did not confirm with opposing counsel the consummation of the agreement.

In November 2015, the seventh client contacted Briley-Holmes about possible representation to contest disciplinary action proposed to be taken against her son by his high school. No representation agreement was signed at that time. The client contacted Briley-Holmes again, said that the school was imposing a ten-day suspension, and said that she wanted to appeal. The

following month, the client paid Briley-Holmes a flat fee of $3,000, which Briley-Holmes said would make her "available at every single step . . . , including all meetings, warrant issuance hearings, suspension appeals, etc." Briley-Holmes contacted the school twice in unsuccessful efforts to obtain information about the case and arrange a meeting. On the second occasion, Briley-Holmes was told that the school's legal counsel would contact her. The client raised specific concerns about her son's circumstances more than once, but Briley-Holmes said that there was little she could do until she received the information that she requested from the school. The school's legal counsel contacted Briley-Holmes more than a month after the client retained her and explained that the school could not release the information requested without an executed release of information form under the federal Family Educational Rights and Privacy Act. Briley-Holmes sent the required form to the client, the client executed and returned it, and Briley-Holmes promptly forwarded the executed form to the school's legal counsel. A week later, the client terminated the representation. Although Briley-Holmes had not performed all the work that she had said that the flat rate would cover, she did not refund any of the fee that the client paid her. The special master concluded that Briley-Holmes violated

9

Rule 1.16 by failing to promptly refund the unearned portion of the fee upon termination of the representation.[4]

In December 2015, the eighth client hired Briley-Holmes to represent him in a civil case, paying her a $3,000 retainer to be billed against at $200 per hour until exhausted. When the retainer ran out, Briley-Holmes asked for an additional $1,800 to continue work on the case. The client said that he thought that the case could be settled for $4,000 total, including the $3,000 retainer that he had paid to Briley-Holmes, but he paid Briley-Holmes an additional $1,000 anyway. Briley-Holmes missed a court date because she was on jury duty but failed to present documents confirming that fact to her client or to the court. Two months later, she missed a second court date, which the client also missed because Briley-Holmes failed to tell him about it, and the court issued an incarceration order for the client. Throughout the representation, Briley-Holmes failed to answer several texts and telephone calls from the client. When the client obtained new counsel, Briley-Holmes failed to forward the client's file.

_____

[4] Rule 1.16 says in part, "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned." The maximum sanction for a single violation of Rule 1.16 is a public reprimand.

The special master concluded that Briley-Holmes violated Rule 1.3 by missing two court dates, violated Rule 1.4 by failing to respond in a timely manner to the client's text messages and telephone calls about the case and by failing to notify him of the second court date, and violated Rule 1.16 by failing to forward the client's file to his new attorney.

In January 2016, the ninth client retained Briley-Holmes to represent her in seeking a child custody modification order and paid her a flat fee of $4,200. Briley-Holmes planned to attend a scheduled hearing but got into an automobile accident on the way to court. Briley-Holmes had her assistant notify the court of the reason for her absence, and court personnel said that the hearing had already been continued by opposing counsel. Briley-Holmes told the client that she was sending her a verification form and a financial affidavit that evening, but the client said in follow-up e-mails that she did not receive them. Briley-Holmes sent the client a draft modification petition two days later, but the client sent an e-mail and a text terminating the representation. Briley-Holmes did not refund any of the fee that the client paid her. The special master concluded that Briley-Holmes violated Rule 1.16 by failing to promptly refund the unearned portion of the fee upon termination of the representation.

11

In April 2016, the tenth client retained Briley-Holmes to seek emergency temporary custody of her son and paid her a flat fee of $2,500. Briley-Holmes communicated extensively with the client by telephone and e-mail and drafted a petition for modification and emergency petition that the client signed and had notarized. The client accompanied Briley-Holmes to the courthouse to file the documents, but no judge was available to hear the emergency petition. Over the weekend, the client decided not to proceed with the case and sent Briley-Holmes a text message to that effect on Monday morning. Briley-Holmes did not refund any of the fee that the client paid her. The special master concluded that Briley-Holmes violated Rule 1.16 by failing to promptly refund the unearned portion of the fee upon termination of the representation.

In late April 2016, the eleventh client paid Briley-Holmes a $5,000 retainer by credit card to represent her in a contempt and custody modification matter. Late the next month, the client terminated the representation and initiated a challenge to the retainer payment with the credit card company, resulting in the reversal of the payment into Briley-Holmes's account. Briley-Holmes believed that the reversal was unjustified, and a month later she filed a pro se civil action against the client without confirming the status of the credit

card payment. By the time Briley-Holmes filed her lawsuit, the credit card company had already reinstated the full $5,000 payment to her account. The special master concluded that Briley-Holmes violated Rule 3.1 when, representing herself pro se, she filed a civil action against the client without first ensuring that the factual basis for the action was valid.[5]

The special master correctly noted that this Court relies on the American Bar Association's Standards for Imposing Lawyer Sanctions for general guidance in determining the appropriate level of discipline. See In the Matter of Morse, 265 Ga. 353, 354 (456 SE2d 52) (1995). See, e.g., In the Matter of Lank, 300 Ga. 479, 482 (796 SE2d 252) (2017). The special master recognized that ABA Standard 4.4, which applies to violations of Rule 1.3, says that absent mitigating circumstances, disbarment is generally appropriate when a lawyer "knowingly fails to perform services for a client and causes serious or potentially serious injury to a client" or "engages in a pattern of neglect with

---

[5] Rule 3.1 says, "In the representation of a client, a lawyer shall not . . . file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another . . . ." Rule 3.1 applies to a lawyer's self-representation. See In the Matter of Morales, 282 Ga. 471 (651 SE2d 84) (2007). The maximum sanction for a single violation of Rule 3.1 is a public reprimand.

13

respect to client matters and causes serious or potentially serious injury to a client." ABA Standard 4.41 (b), (c). The special master found that Briley-Holmes knowingly violated Rule 1.3 in her representation of seven clients and engaged in a pattern of neglect with respect to client matters and that her misconduct had caused at least three clients serious injury, as two had their cases dismissed and a third suffered arrest and a period of incarceration. The special master thus concluded that under the ABA Standards, disbarment was the presumptive appropriate sanction for the Rule 1.3 violations, adding that this Court frequently disbars lawyers who repeatedly abandon their clients, and citing as examples In the Matter of Ellison, 282 Ga. 647 (651 SE2d 746) (2007), In the Matter of Ballard, 280 Ga. 504 (629 SE2d 809) (2006), and In the Matter of Peebles, 280 Ga. 229 (626 SE2d 488) (2006).

The special master recognized that ABA Standard 4.4 also applies to violations of Rule 1.4 and says that absent aggravating or mitigating circumstances, suspension is generally appropriate when a lawyer "knowingly fails to perform services for a client and causes injury or potential injury to a client" or "engages in a pattern of neglect [and] causes injury or potential injury to a client." ABA Standard 4.42. The special master found that Briley-Holmes

14

violated Rule 1.4 in her representation of three clients and caused them injury or potential injury. The special master thus concluded that under the ABA Standards, the presumptive appropriate sanction for the Rule 1.4 violations would be at least a suspension. The special master noted, however, that under the Georgia Rules of Professional Conduct, the maximum sanction for a single violation of Rule 1.4 is a public reprimand.[6]

The special master recognized that ABA Standard 7.0 applies to violations of Rule 1.16 and says that absent aggravating or mitigating circumstances, suspension is generally appropriate when a lawyer "knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." ABA Standard 7.2. The special master found that Briley-Holmes violated Rule 1.16 in her representation of four clients, in one case by failing to promptly surrender the client's file and in the other three cases by failing to promptly refund unearned

---

[6] Although not noted by the special master, the ABA Standards say:
The standards do not account for multiple charges of misconduct. The ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct. Either a pattern of misconduct or multiple instances of misconduct should be considered as aggravating factors (see Standard 9.22).
ABA Standards, II. Theoretical Framework.

15

fees. The special master further found that in each of the latter three cases, this misconduct was not an oversight; instead, Briley-Holmes made a decision not to refund the unearned fee, meaning that she knowingly engaged in the misconduct. The special master concluded that under the ABA Standards, the presumptive appropriate sanction would be at least a suspension. The special master noted, however, that under the Georgia Rules of Professional Conduct, the maximum sanction for a single violation of Rule 1.16 is a public reprimand.

The special master said that ABA Standard 7.0 also applies to violations of Rule 3.1.[7] The special master found that Briley-Holmes violated Rule 3.1 in her representation of one client, quoted ABA Standards 7.1 and 7.2, and said, "Again, however, the maximum penalty under the Georgia Rules of Professional Conduct for violating Rule 3.1 is a Public Reprimand."

In aggravation of discipline, the special master found that Briley-Holmes has a prior disciplinary offense, having received a letter of formal admonition in 2014, see ABA Standard 9.22 (a);[8] that she engaged in a pattern of

---

[7] This statement is incorrect. ABA Standard 6.2, which addresses abuse of the legal process, applies to Rule 3.1 violations.

[8] The State Bar has not disclosed the basis for the letter of formal admonition. See Bar Rule 4-208.

16

misconduct in these 11 cases, committing multiple violations of Rules 1.3, 1.4, and 1.16, see ABA Standard 9.22 (c); that her misconduct encompassed multiple offenses, see ABA Standard 9.22 (d); and that most of the victims of Briley-Holmes's misconduct were in a vulnerable position, as they were not affluent and had difficulty with English or were involved in domestic relations or criminal cases, see ABA Standard 9.22 (h).  The special master also found that Briley-Holmes has displayed indifference to making restitution, noting that she had effectively blocked the fee arbitration process in several cases by failing to provide necessary information and had failed to make any payment toward any of the seven existing arbitration awards against her, most of which had been referred to outside counsel to pursue collection actions.  See ABA Standard 9.22 (j).  In connection with this last aggravating circumstance, the special master noted that this Court "nearly always responds harshly to failure to make full restitution before the imposition of disciplinary sanctions," citing In the Matter of Henderson, 289 Ga. 837 (716 SE2d 223) (2011), In the Matter of Henderson, 289 Ga. 135 (710 SE2d 124) (2011), and In the Matter of Winningham, 285 Ga. 175 (674 SE2d 877) (2009).

In mitigation of discipline, the special master found that Briley-Holmes lacked a selfish or dishonest motive in several cases, see ABA Standard 9.32 (b); that she was suffering from personal or emotional problems in all of the cases, including trouble in her marriage that led to divorce and, in one case, her law partner's drug and alcohol problems as a practical matter impaired her ability to practice, see ABA Standard 9.32 (c); that she made a timely good faith effort to make restitution and to rectify the consequences of her misconduct in one case, see ABA Standard 9.32 (d); that she made a full and free disclosure to the State Bar and was cooperative in the disciplinary proceedings in six cases, see ABA Standard 9.32 (e); that as to at least some of her misconduct, she was relatively inexperienced in the practice of law, having been admitted to practice in 2010, see ABA Standard 9.32 (f); and that she feels remorse, see ABA Standard 9.32 (l). The special master further found that Briley-Holmes voluntarily stopped practicing law around mid-September 2016.

As noted above, the special master recommends that this Court accept Briley-Holmes's amended second petition and impose a five-year suspension with conditions on reinstatement. However, after careful consideration of the

record, the Court finds that the discipline recommended by the special master, which is not opposed by the State Bar, is unacceptable.

First, with one exception, it does not appear that this Court has ever imposed a five-year suspension as a disciplinary sanction outside the reciprocal discipline context. See, e.g., In the Matter of Sanders, 303 Ga. 293 (811 SE2d 344) (2018) (five-year suspension in reciprocal discipline case); In the Matter of Erickson, 290 Ga. 369 (720 SE2d 632) (2012) (same). See also In the Matter of Sicay-Perrow, 301 Ga. 666 (802 SE2d 252) (2017) (suspension for five years or until reinstatement in Tennessee, whichever is earlier). The exception is In the Matter of Crudup, 264 Ga. 202 (442 SE2d 736) (1994), where this Court conditionally imposed a five-year suspension for an attorney's abandonment of five matters so that the attorney, who was suffering from a terminal illness, could "die while a lawyer." Id. at 202.[9] In any event, Crudup was decided a year before this Court first said that it would look to the ABA Standards for general guidance in determining the appropriate level of discipline. See Morse,

---

[9] In another case, In the Matter of Rand, 279 Ga. 555 (616 SE2d 452) (2005), this Court invoked Bar Rule 4-104 (a) to "remov[e] the attorney from the practice of law" for five years due to mental incapacity. Removal from practice for mental incapacity, however, is not the same thing as a disciplinary sanction imposed for misconduct.

265 Ga. at 354. ABA Standard 2.3 says, "Generally, suspension should be for a period of time equal to or greater than six months, but in no event should the time period prior to application for reinstatement be more than three years."

Second, the special master's own analysis shows that Briley-Holmes's misconduct warrants a more severe sanction than a suspension with conditions on reinstatement. As the special master recognized, disbarment is the maximum sanction for a single violation of Rule 1.3; this Court frequently disbars attorneys for Rule 1.3 violations; Briley-Holmes violated Rule 1.3 in her representation of seven clients in unrelated matters; and under the ABA Standards, the presumptive appropriate discipline, before consideration of mitigating circumstances, would be disbarment, because Briley-Holmes's violations of Rule 1.3 were knowing, she engaged in a pattern of neglect with respect to client matters, and her Rule 1.3 violations caused three of her clients serious injury. The special master also found, and the record shows, that while Briley-Holmes pointed to a number of cognizable mitigating factors, upon close examination, their weight in many instances is undermined, attenuated, or even eliminated. Moreover, as the special master said, the mitigating factors are "offset by five serious aggravating factors."

Finally, as the special master aptly put it:

> Together, these cases reveal a disturbingly extensive pattern of similar misconduct extending over a period of several years, including seven cases of abandonment (Rule 1.3), [three] cases involving failure to communicate with clients (Rule 1.4), and four cases of violating obligations to clients upon termination of representation (Rule 1.16).

Thus, disbarment is the appropriate sanction in this matter.

We construe Briley-Holmes's amended second petition as a petition for voluntary surrender of license, and we accept the voluntary surrender of her license. Accordingly, it is hereby ordered that the name of Shannon Briley-Holmes be removed from the rolls of persons authorized to practice law in the State of Georgia. We remind her of her duties pursuant to Bar Rule 4-219 (c).

Voluntary surrender of license accepted. All the Justices concur.

Decided June 4, 2018 — Reconsideration denied July 12, 2018.

Voluntary surrender of license.

Paula J. Frederick, General Counsel State Bar, Jenny K. Mittelman, William J. Cobb, Assistant General Counsel State Bar, for State Bar of Georgia.