304 Ga. 635
FINAL COPY

S19Y0099. IN THE MATTER OF RICHARD ALLEN HUNT.

PER CURIAM.

Richard Allen Hunt (State Bar No. 378650) was admitted to practice law in 1973 and has been sanctioned for disciplinary violations five times. After an October 2015 hearing, a judge reported Hunt to the State Bar for alleged ethical violations. In October 2016, the Investigative Panel of the State Disciplinary Board issued a Notice of Finding of Probable Cause. Hunt filed a petition for voluntary discipline admitting several violations of a single rule and seeking a suspension of six months to one year, which this Court rejected. See In the Matter of Hunt, 301 Ga. 661 (802 SE2d 243) (2017). He filed a second petition for voluntary discipline admitting the same rule violations and seeking a suspension of 18 months to two years but later withdrew that petition with the Court's permission. See In the Matter of Hunt, Case No. S18Y0326 (Feb. 5, 2018). The State Bar then filed a formal complaint in February 2018. Hunt filed

a verified, pro se answer admitting virtually all the complaint's factual allegations, and Special Master Adam Hames granted the State Bar's unopposed motion for judgment on the pleadings. After an evidentiary hearing on mitigation, on July 23, 2018, the special master issued a report, recommending that this Court disbar Hunt. Hunt did not seek review by the State Disciplinary Review Board and thus waived his right to file exceptions with this Court. See former Bar Rule 4-217 (c).[1]

As the special master recounts, Hunt's verified answer admitted the following facts, which the record supports. Hunt represented a client and her two minor sons in a wrongful death case, and in November 2002, Hunt settled the case for $100,000, with the client receiving $50,000 and each child receiving $25,000. Hunt then represented the client in probate court, helping her get appointed as her sons' conservatrix (which at the time was called a "guardian

---

[1] On January 12, 2018, this Court entered an order amending Part IV of the Rules and Regulations for the Organization and Government of the State Bar of Georgia ("Bar Rules"), including Bar Rule 4-102 (d), which contains the Georgia Rules of Professional Conduct. The order said that, with two exceptions not relevant here, "these amendments shall be effective as of July 1, 2018 and shall apply to disciplinary proceedings commenced on or after that date." The order further specified that "the former rules shall continue to apply to disciplinary proceedings commenced before July 1, 2018" — such as this matter — "provided that, after July 1, 2018, the State Disciplinary Board shall perform the functions and exercise the powers of the Investigative Panel under the former rules, and the State Disciplinary Review Board shall perform the functions and exercise the powers of the Review Panel under the former rules."

of the property") and file some, but not all, of the required annual probate court reports. In 2011, when the client's home was in foreclosure, she removed $737 from each child's account to make a mortgage payment without the court's permission. The court later cited her for removing the funds, mismanagement of the accounts, and not filing all the required reports, and after a January 2014 hearing, the court revoked her appointment as conservatrix and appointed Althea Caces as successor conservatrix. Hunt offered to deliver the children's funds to Caces, so the client gave him her sons' money — almost $60,000 — which he deposited into his attorney trust account, and at the client's request, he appealed the order revoking her appointment as her sons' conservatrix. By the end of January 2014, Hunt had taken more than half of the children's funds from his attorney trust account, and over time he took all but a few dollars, spending the money for his own personal and business expenses.

On March 4, 2015, the Court of Appeals affirmed the probate court's order revoking the client's appointment as the children's conservatrix in an unpublished opinion. See In re Estate of Gonzalez, 330 Ga. App. XXVI (A14A1665, A14A1691) (March 4, 2015). At the client's request, Hunt filed a petition for certiorari, which this Court denied on June 1, 2015. See In re

3

Estate of Gonzalez, Case No. S15C1036. The next month, Caces asked Hunt for the children's money, and he sent her two checks for $29,903.86 drawn on his attorney trust account, even though the account had insufficient funds to cover the checks. The checks bounced, and Cobb County Probate Court Judge Kelli L. Wolk ordered Hunt to appear in court on October 19, 2015, and deliver the children's money to Caces. Hunt appeared at the hearing, bringing a certified check for only half the funds, and he admitted to Judge Wolk that he had spent the children's money for his own personal and business purposes. Hunt asked for a continuance to obtain counsel, which was granted, and Judge Wolk reconvened the hearing a week later, on October 26, 2015.[2] Hunt appeared without counsel, and he had not turned over the rest of the children's money to Caces. Hunt did not fully replace the funds that he misappropriated until several months later.

On June 29, 2018, the special master granted the State Bar's unopposed motion for judgment on the pleadings. The special master concluded that Hunt violated Georgia Rule of Professional Conduct ("Rule") 1.15 (I) (a) by

[2] The special master's report incorrectly states that Judge Wolk reconvened the hearing more than a year later, on "October 26, 2016." However, it is clear from the record that "2016" is a scrivener's error.

4

removing the children's money from his attorney trust account and using it for his own personal and business purposes.[3] The special master concluded that Hunt violated Rule 1.15 (I) (c) by failing to promptly deliver the children's funds from the client, as conservatrix, to Caces, as successor conservatrix.[4] The special master concluded that Hunt violated Rule 1.15 (II) (b) by withdrawing the children's money from his attorney trust account and commingling his funds with the children's funds.[5] While Hunt admitted in his answer that he used the

---

[3] Rule 1.15 (I) (a) says in part:
    A lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property. Funds shall be kept in one or more separate accounts maintained in an approved institution as defined by Rule 1.15 (III) (c) (1). . . . Complete records of such account funds . . . shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

[4] Rule 1.15 (I) (c) says:
    Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

[5] Rule 1.15 (II) (b) says:
    No personal funds shall ever be deposited in a lawyer's trust account, except that unearned lawyer's fees may be so held until the same are earned. Sufficient personal funds of the lawyer may be kept in the trust account to cover maintenance fees such as service charges on the account. Records on such trust accounts shall be so kept and maintained as to reflect at all times the exact balance held for each client or third person. No funds shall be withdrawn from such trust accounts for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such.

children's money, he claimed that he did so "with notice to all interested parties." The special master assumed the truth of this factual allegation for purposes of the State Bar's motion for judgment on the pleadings but said that it did not change Hunt's admission of facts showing that he violated the Rules. Finally, the special master concluded that Hunt violated Rule 8.4 (a) (4) by telling the client that he would deliver her sons' money to Caces and not doing so and by dishonestly taking fiduciary funds to which he was not entitled.[6] The maximum sanction for a single violation of Rule 1.15 (I), 1.15 (II) (b), or 8.4 (a) (4) is disbarment.

Hunt then requested an evidentiary hearing on mitigation, which the special master held on July 17, 2018. At the hearing, Hunt asked the special master to recommend a lengthy suspension in lieu of disbarment, while the State Bar argued that Hunt should be disbarred. Hunt's counsel stated, without objection, that Hunt had been practicing law for 44 years, that he started his career as a public defender, that he worked in the public defender's office for seven years before going into private practice, that he had been battling prostate

---

[6] Rule 8.4 (a) (4) says, "It shall be a violation of the [Rules] for a lawyer to: . . . engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation."

cancer for the last six-and-a-half years, and that he has done a great deal of pro bono work over the years, including helping a young immigrant with his immigration status. Hunt then testified and presented a short, written outline of his general personal and business history, a portion of which the special master sealed at the State Bar's request. The State Bar cross-examined Hunt and presented a transcript, which the special master also sealed, of the October 26, 2015 hearing that prompted Judge Wolk to report Hunt to the State Bar.

In his written statement and testimony, Hunt said that he began buying real estate in college, eventually owning a number of properties; that he could not get bank loans as a result of the 2008 economic crisis and got a loan from a friend and fellow lawyer secured by his house, a quadraplex next door that he owned, and his office building, which he also owned; and that when he missed a payment, the friend initiated foreclosure proceedings against the properties, which Hunt unsuccessfully sought to block through litigation. Hunt stated that when his longtime secretary was hit by a MARTA bus on November 4, 2014, he filed a lawsuit on her behalf and continued paying her even though she could

7

no longer work, and that it took longer to settle the case than he expected.[7] Hunt testified that he later met with the client and her sons in his car; repeatedly played them video of his secretary's accident that he had obtained from MARTA; told them that he had been using the children's money to fund the secretary's personal injury lawsuit against MARTA; and offered to pay each boy at least $5,000 and give the client a percentage of the settlement proceeds from the case against MARTA if they would agree to let him continue using the children's money until the case settled. According to Hunt, the client and her sons orally agreed to this arrangement.

Hunt admitted that his use of the children's funds was not a one-time incident but instead took place over several months, and he said that it caused him tremendous pressure and concern each time that he made a withdrawal, because he knew the Rules and understood that he was violating them each time he withdrew the money. Hunt also admitted that he knew that the client and her sons could not authorize him to violate the Rules by agreeing to his proposal and that he was responsible for his actions, not them. Hunt said that he rationalized

---

[7] The case eventually settled on May 23, 2018, after Hunt associated an experienced civil litigator on the case. Hunt explained that throughout his career, he had primarily practiced criminal law.

that the recovery in the MARTA case would provide sufficient funds to allow him to "cure the delinquency" and honor his commitment to the client and her sons. Hunt added that he will turn 82 in January 2019 and understands that his ability to practice law will end when this disciplinary matter moves forward but said that "[i]t would just be nice to know that I died being a member of the Bar as opposed to being disbarred."[8] He explained, "Unfortunately, I made a big gamble. I gambled that I could settle the MARTA case before I had to repay the funds. And that's not how it developed." Hunt admitted on cross-examination that in the client's testimony at the October 26, 2015 probate court hearing, she denied knowing until the week before that Hunt had used her sons' money for his own personal and business purposes and denied any knowledge of the alleged meeting in Hunt's car where she purportedly gave him permission to continue using the children's money.

On July 23, 2018, the special master issued his report and recommendation. The special master noted that although Hunt requested the

---

[8] In his written statement, Hunt said that both his parents lived into their mid- to late-90s and that "[t]his means I can make a contribution to society for another 10-15 years." He also said that "[t]his contribution could be easier and better with a suspension of license rather than disbarment." The State Bar did not seek to clarify what Hunt meant by this at the mitigation hearing, and the State Bar acknowledged its understanding that by that point, Hunt had wound down his legal practice.

evidentiary hearing on mitigation, aside from the statements of his counsel, he presented no actual evidence of his claimed pro bono work and other good deeds over the years. The special master also noted that Hunt did not call any character witnesses to testify at the hearing, and that despite being given the opportunity to submit affidavits from anyone he chose, Hunt submitted no affidavits in support of his request for a sanction less than disbarment. The special master specifically found that Hunt's testimony about the alleged meeting in his car with the client and her sons was not credible, adding that even if Hunt's story were completely true, he would have admitted violating two additional Rules, which, with exceptions not applicable here, prohibit a lawyer from providing financial assistance to a client in connection with pending or contemplated litigation (his secretary) and from sharing legal fees with nonlawyers (the client and her sons). See Rules 1.8 (e), 5.4 (a).

The special master correctly noted that this Court relies on the American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") for general guidance in determining the appropriate level of discipline. See In the Matter of Morse, 265 Ga. 353, 354 (456 SE2d 52) (1995) (Morse I); In the Matter of Morse, 266 Ga. 652, 653 (470 SE2d 232) (1996) (Morse II).  ABA

10

Standard 4.1, which addresses failure to safeguard client property, applies to violations of Rules 1.15 (I) and 1.15 (II), and ABA Standards 4.6 and 5.1, which address lack of candor to a client and failure to maintain personal integrity, apply to violations of Rule 8.4 (a) (4). See ABA Standards Appendix 1. Compare Rules 1.15 (I), 1.15 (II), and 8.4 (a) (4), with ABA Model Rules of Professional Conduct 1.15 and 8.4 (c). The special master cited ABA Standards 4.11 and 5.11 (a). ABA Standard 4.11 says that absent mitigating circumstances, disbarment is generally appropriate when a lawyer "knowingly converts client property and causes injury or potential injury to a client."[9] ABA Standard 5.11 (a) says in part that absent mitigating circumstances, disbarment is generally appropriate when a lawyer "engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or

---

[9] The ABA Standards define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct," stating that "[t]he level of injury can range from 'serious' injury to 'little or no' injury," and that "a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." The ABA Standards define "potential injury" as "the harm to a client, the public, the legal system[,] or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

11

theft."[10]

The special master rejected as flawed the mitigating circumstances that Hunt asserted.[11] Although Hunt testified that he did not "deliberately try to take any money from these kids" with the intent to permanently deprive them of it, the special master rejected his assertion of the absence of a dishonest or selfish motive, see ABA Standard 9.32 (b), finding that Hunt's testimony in this regard was merely a post hoc attempt to mitigate his "knowing theft, or at best misappropriation," of the children's money and was inconsistent with his admission that each time he took the money, he knew that he was violating the Rules and that he was responsible. The special master acknowledged that Hunt ultimately repaid the money that he took from the children but rejected his

---

[10] The special master did not cite ABA Standard 4.61, which says that absent mitigating circumstances, disbarment is generally appropriate when a lawyer "knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client." The special master also did not cite ABA Standard 5.11 (b), which says that absent mitigating circumstances, disbarment is generally appropriate when a lawyer "engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

[11] ABA Standard 9.31 defines "[m]itigation or mitigating circumstances" as "any considerations or factors that may justify a reduction in the degree of discipline to be imposed," and ABA Standard 9.32 then lists 13 "[f]actors which may be considered in mitigation." These factors must be evaluated in conjunction with ABA Standard 9.4, which lists six "[f]actors which are neither aggravating nor mitigating," such as "forced or compelled restitution," ABA Standard 9.4 (a), and "failure of injured client to complain," ABA Standard 9.4 (f).

assertion of a timely and good faith effort to make restitution or to rectify the consequences of his misconduct, see ABA Standard 9.32 (d), noting that Hunt replaced the funds that he took only after his conversion of the funds was discovered and he had been ordered to appear before Judge Wolk. See ABA Standard 9.4 (a) ("The following factors should not be considered as either aggravating or mitigating: . . . forced or compelled restitution."). The special master also rejected Hunt's assertion that he made a full and free disclosure of his misconduct to the State Bar or displayed a cooperative attitude toward the disciplinary proceedings, see ABA Standard 9.32 (e), explaining that he forced the State Bar to file a formal complaint and seek the appointment of a special master by withdrawing his second petition for voluntary discipline, and that while he admitted virtually all the factual allegations in the complaint, he denied violating the corresponding Rules.[12] The special master noted, but did not discuss, Hunt's assertion of his prostate cancer as a mitigating circumstance.[13]

---

[12] Hunt admitted at the mitigation hearing that he asked this Court for permission to withdraw his second petition for voluntary discipline in January 2018 because the MARTA case had not yet settled. As noted above, that case settled on May 23, 2018.

[13] It is unclear whether Hunt intended to raise his prostate cancer under the rubric of "personal or emotional problems," ABA Standard 9.32 (c), or "physical disability," ABA Standard 9.32 (h). Either way, he made no attempt at the mitigation hearing to explain how his illness or treatment might relate to his violations of the Rules. The special master found in his report that

13

The special master then turned to the question of aggravation and found most of the 11 aggravating circumstances listed in ABA Standard 9.22 to be present.[14] The special master found that Hunt had prior disciplinary offenses, see ABA Standard 9.22 (a), having received a formal letter of admonition in 2004, another formal letter of admonition in 2006, an interim suspension in 2008, a public reprimand in 2009, see In the Matter of R. A. H., 285 Ga. 870, 870-871 (684 SE2d 631) (2009), and an Investigative Panel Reprimand in 2016;[15] that he acted with a dishonest or selfish motive, see ABA Standard 9.22 (b), as he admitted spending the misappropriated funds for his personal expenses and to pursue a personal injury case in which he stood to reap a significant fee after settlement; that he had a pattern of misconduct, see ABA Standard 9.22 (c), pointing to his admission of multiple withdrawals of the children's money for

"[t]hankfully, Mr. Hunt appeared to be in good health at the [mitigation] hearing."

[14] ABA Standard 9.21 defines "[a]ggravation or aggravating circumstances" as "any considerations or factors that may justify an increase in the degree of discipline to be imposed," and ABA Standard 9.22 then lists 11 "[f]actors which may be considered in aggravation."

[15] The State Bar has not disclosed to this Court the bases for the formal letters of admonition in 2004 and 2006 and the Investigative Panel Reprimand in 2016. See former Bar Rule 4-208 ("An accepted letter of formal admonition or an Investigative Panel Reprimand shall be considered as a disciplinary infraction for the purpose of invoking the provisions of Rule 4-103. In the event of a subsequent disciplinary proceeding, the confidentiality of the imposition of confidential discipline shall be waived and the Office of the General Counsel may use such information as aggravation of discipline.").

14

improper purposes; that he refused to acknowledge the wrongful nature of his conduct, see ABA Standard 9.22 (g), noting that he did not apologize to the client and her sons at the mitigation hearing, and that while he would acknowledge wrongdoing in one breath, in the next breath he would persist in his narrative that the client and her sons knew that he was using the children's money for his own purposes; that the victims of his misconduct were vulnerable, see ABA Standard 9.22 (h), as the client did not speak English well or understand exactly what had transpired, and her sons were minors who had to rely on their mother and Hunt; that he had substantial experience in the practice of law, see ABA Standard 9.22 (i), given that he was admitted to practice in Georgia in 1973, adding that Hunt "should have, and did, know better, but chose to misappropriate his client's funds"; and that his violations of the Rules involved illegal conduct, see ABA Standard 9.22 (k), citing the theft by taking statute and the related sentencing statute, see OCGA §§ 16-8-2, 16-8-12 (a) (3). The special master stated that "[b]ased on the admitted facts, a case of theft by fiduciary would not be difficult to prove," and that "Hunt should count himself

15

lucky that he has not been criminally prosecuted for his actions."[16] The special master noted that this is Hunt's sixth disciplinary action, and that under former Bar Rule 4-103, "[a] finding of a third or subsequent disciplinary infraction under these rules shall, in and of itself, constitute discretionary grounds for suspension or disbarment." See Hunt, 301 Ga. at 663 ("Hunt has an extensive and recent history of discipline.").

The special master concluded that disbarment rather than suspension is the appropriate discipline. The special master reasoned that this Court has already considered and rejected a suspension for six months to one year for Hunt's violations of Rule 1.15 (II) (b); that ABA Standard 2.3 says that in no event should a suspension be for more than three years, see In the Matter of Coulter, 304 Ga. 81 (816 SE2d 1) (2018);[17] that "this Court views trust account

---

[16] The special master did not mention in aggravation "multiple offenses," ABA Standard 9.22 (d), despite finding that Hunt's misconduct violated more than one Rule.

[17] ABA Standard 2.3 says in part, "Generally, suspension should be for a period of time equal to or greater than six months, but in no event should the time period prior to application for reinstatement be more than three years." See In the Matter of Briley-Holmes, 304 Ga. 199, 207-208 (815 SE2d 59) (2018) (quoting ABA Standard 2.3 and noting that "with one exception, it does not appear that this Court has ever imposed a five-year suspension as a disciplinary sanction outside the reciprocal discipline context," and that the exception was in a case "decided a year before this Court first said that it would look to the ABA Standards for general guidance in determining the appropriate level of discipline").

violations as exceptionally serious," id. at 83; that "[t]he mitigation presented lacks substance and is often not supported by the record"; and that "there are several factors in aggravation of punishment as set forth above." The special master reviewed the cases that Hunt submitted in support of a suspension and found them distinguishable based on the nature of the violations at issue or differences in the aggravating and mitigating circumstances present.[18] Finally, the special master cited cases involving similar situations where this Court has disbarred a lawyer.[19]

Having carefully reviewed the record, we agree that disbarment is the

---

[18] Among other cases, the special master cited In the Matter of Morgan, 303 Ga. 678 (814 SE2d 394) (2018), and In the Matter of Duncan, 301 Ga. 898 (804 SE2d 342) (2017). In Morgan, this Court accepted a lawyer's petition for voluntary discipline and imposed a two-year suspension with conditions on reinstatement for his violations of Rules 1.15 (I), 1.15 (II) (b), and 8.4 (a) (4), but only two aggravating circumstances were present and there were five mitigating circumstances, including the absence of a prior disciplinary record, see ABA Standard 9.32 (a). See 303 Ga. at 679-680. In Duncan, this Court accepted a lawyer's petition for voluntary discipline and imposed a six-month suspension with conditions on reinstatement for his violations of Rules 1.4, 1.15 (I), 1.15 (II) (b), and 1.16, but only one aggravating circumstance was present and there were six mitigating circumstances, including the absence of a prior disciplinary record. See 301 Ga. at 899-901.

[19] Among other cases, the special master cited In the Matter of Rose, 299 Ga. 665 (791 SE2d 1) (2016), and In the Matter of Mathis, 289 Ga. 176 (712 SE2d 809) (2011). In Rose, this Court agreed with a special master's recommendation and disbarred a lawyer for his violations of Rules 1.15 (I), 1.15 (II) (b), and 8.4 (a) (4), despite the presence of only one aggravating circumstance and the absence of a prior disciplinary record. See 299 Ga. at 666. In Mathis, a lawyer failed to reject a notice of discipline, and this Court disbarred him for his violations of Rules 1.15 (I), 1.15 (II) (b), 8.4 (a) (4), and other Rules, despite his having a less extensive history of prior disciplinary offenses than Hunt has and the presence of only one other aggravating circumstance, where, as here, there were no mitigating circumstances. See 289 Ga. at 177.

17

appropriate sanction in this matter. Accordingly, it is hereby ordered that the name of Richard Allen Hunt be removed from the rolls of persons authorized to practice law in the State of Georgia. He is reminded of his duties pursuant to former Bar Rule 4-219 (c).

Disbarred.  All the Justices concur.

Decided October 22, 2018.

Disbarment.

Paula J. Frederick, General Counsel State Bar, Jenny K. Mittelman, Assistant General Counsel State Bar, for State Bar of Georgia.

Stephen M. Friedberg, for Hunt.