314 Ga. 208
FINAL COPY

S22Y0802.  IN THE MATTER OF GLEN ROY FAGAN.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of Special Master Adam M. Hames, who recommends that respondent Glen Roy Fagan (State Bar No. 253944) be disbarred based on his violations of Rules 1.7, 1.8 (b), 1.15 (I), 8.4 (a) (4), and 9.3 of the Georgia Rules of Professional Conduct found in Bar Rule 4-102 (d).  Because Fagan did not answer or otherwise respond to the formal complaint, which was properly served by publication, the Special Master granted the State Bar's motion for default pursuant to Bar Rule 4-212 (a), and the facts as set out in the formal complaint were deemed admitted.  See *In the Matter of Wadsworth*, 312 Ga. 159, 159 (861 SE2d 104) (2021).  In addition, the Special Master determined, as an initial matter, that while Fagan, who became a member of the State Bar in 2000,

resigned his membership in the State Bar before the complaint giving rise to this matter was filed with the Office of General Counsel, he was still subject to these disciplinary proceedings. See Bar Rule 9.4 (a) (providing that "[a]ny lawyer admitted to practice law in this jurisdiction, including any formerly admitted lawyer with respect to acts committed prior to resignation . . . is subject to the disciplinary jurisdiction of the State Bar of Georgia"); *In the Matter of Fry*, 300 Ga. 862, 865 (800 SE2d 514) (2017) (concluding that allowing a resignation, in the absence of disbarment, "would leave [a lawyer's] disciplinary record completely clean . . . and if he chose to apply for admission in other jurisdictions in future years, he would be able to truthfully report that he has no disciplinary record in Georgia"). See also Bar Rule 1-208 (e) ("Resignation shall not be a bar to institution of subsequent disciplinary proceedings for any conduct of the resigned person occurring prior to the resignation. If the penalty imposed on the resigned member is disbarment or suspension, the status of the member shall be changed from 'resigned member' to that of a person so disciplined.").

The facts as set forth in the Special Master's report are as follows. Fagan was employed as an associate general counsel by U.S. Xpress, Inc. ("USX") in Tennessee from August 2015 until February 2019, and at all relevant times, he was also registered as in-house counsel to practice law in Tennessee. As part of his employment with USX, Fagan oversaw employment-related lawsuits, administrative charges, and complaints and allegations of employee misconduct. On April 30, 2018, Fagan falsified in its entirety an Equal Employment Opportunity Commission ("EEOC") complaint allegedly filed by an individual named Karen Sawyer; on May 2, 2018, he incorporated the law firm of Kirk James and Associates, LLC ("Kirk James"); and on August 27, 2018, he communicated to his supervisor that he attended a mediation in the Sawyer matter and also created a confidential settlement agreement and general release in the matter. Fagan then signed the settlement agreement and general release on behalf of himself and Sawyer, whose signature he forged, and on August 28, 2018, he instructed USX to issue payment for $27,000 to Kirk James for the Sawyer

3

settlement and provided USX with a W-9 form for Kirk James. Fagan then deposited the $27,000 settlement check into the account of Kirk James and converted the money to his own use.

In addition, on January 29, 2019, Fagan signed a confidential settlement agreement and general release purporting to be initialed and signed by Virginia Ladd to settle her claim against USX for $14,000, and then forged Ladd's initials and signature on the settlement agreement. On the same day, Fagan e-mailed an employee with USX to authorize the disbursement of funds to Kirk James, the purported firm representing Ladd; USX then issued a check in the amount of $14,000 payable to Kirk James; and Fagan deposited the check into Kirk James's account and converted the money to his own use.

On February 1, 2019, Fagan announced that he was resigning from his position with USX to accept a position with another company in Atlanta, Georgia. On February 12, 2019, he signed and filed a position statement with the EEOC on the Ladd case, even though the case was allegedly settled; on February 14, 2019, Fagan

4

met with employees at USX regarding his cases and listed the Ladd case as pending with a note that he submitted the position statement to the EEOC; and on February 15, 2019, he stopped working for USX. On August 20, 2019, the EEOC contacted USX regarding settling the Ladd case, and upon review, USX became aware of Fagan's misconduct in that case, as well as in the Sawyer case. USX filed a complaint with the Tennessee Board of Responsibility in October 2019, and after USX filed its complaint, Fagan entered into a promissory note with USX, paying USX $45,243.29, which included full repayment of the $41,000 from the Ladd and Sawyer settlements, plus interest. Fagan resigned his membership with the Georgia Bar before it received USX's complaint in this matter, and thereafter, he failed to respond to disciplinary authorities' requests for information in this disciplinary proceeding.

The Special Master determined that Fagan admitted through his default to the State Bar's allegations that he violated Rule 1.7 (a), because his own interests materially and adversely affected his

5

representation of USX; Rule 1.8 (b), by using information gained in his professional relationship with USX to the disadvantage of USX; and Rule 1.15 (I), when he retained and misappropriated settlement funds paid out by USX and failed to disburse to the proper parties the settlement funds paid out by USX. The Special Master stated that Fagan also admitted violating Rule 8.4 (a) (4) when he (1) falsified a complaint allegedly filed by an employee of USX; (2) entered into fraudulent settlements on behalf of USX; (3) falsified documents, including but not limited to settlement documents in matters he was overseeing; (4) misled USX regarding the status of matters he was overseeing; (5) forged signatures of the complaints on settlement agreements and settlement checks; (6) incorporated a law firm, Kirk James, and instructed USX to disburse settlement funds for falsified settlements to this law firm; (7) misled USX into disbursing settlement funds in the amount of $41,000 to Kirk James; and (8) retained settlement funds paid out by USX. The Special Master also stated that Fagan admitted violating Rule 9.3 when he failed to respond to disciplinary authorities.

6

Finally, the Special Master stated that Fagan admitted violating Rule 4.1 (a), by falsely representing to USX that he had settled claims and falsely representing to USX the status of matters he was overseeing. However, the Special Master determined that USX was not a "third person," as contemplated in Rule 4.1 (a), but rather Fagan's client, and although Fagan made false statements to other third parties, the State Bar's allegation was specifically that he had falsely stated to USX (i.e., his client) that he settled claims and provided false status reports on his cases. Accordingly, based upon the plain language of Rule 4.1 (a) and the specific allegation in the State Bar's complaint, the Special Master concluded that this admission provided no basis for a sanction. The Special Master noted that the maximum sanction for a single violation of Rules 1.7, 1.8 (b), 1.15 (I) and 8.4 (a) (4) is disbarment, while the maximum sanction for a violation of Rule 9.3 is a public reprimand.

In considering the appropriate sanction, the Special Master considered the ABA Standards for Imposing Lawyer Sanctions, see *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996), and

the primary purposes of disciplinary matters, including "to protect the public from attorneys who are not qualified to practice law due to incompetence or unprofessional conduct," *In the Matter of Skandalakis*, 279 Ga. 865, 866 (621 SE2d 750) (2005) (citation and punctuatuion omitted), and the protection of the public's confidence in the legal system, see *In the Matter of Blitch*, 288 Ga. 690, 692 (706 SE2d 461) (2011). The Special Master determined that Fagan violated a duty to his client and to the legal profession; that he acted knowingly; and that while he had repaid the misappropriated money, with interest, to his client, the potential injury could have been significant. See ABA Standard 3.0. Moreover, the Special Master noted that pursuant to ABA Standard 4.11, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client," and that disbarment is also appropriate when a "lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA Standard 5.11 (b).

8

As for aggravating factors, the Special Master concluded that the State Bar had established that Fagan acted with a dishonest and selfish motive, ABA Standard 9.22 (b); engaged in a pattern of misconduct resulting in multiple offenses, ABA Standard 9.22 (c); and had substantial experience in the practice of law, ABA Standard 9.22 (i). In addition, the Special Master concluded that Fagan engaged in illegal conduct, including "theft, forgery, and wire fraud at a minimum." ABA Standard 9.22 (k). See *In the Matter of Hunt*, 304 Ga. 635, 643 (820 SE2d 716) (2018) (reciting that the Special Master had concluded that ABA Standard 9.22 (k) applied where "[b]ased on the admitted facts, a case of theft by fiduciary would not be difficult to prove"). Indeed, as the Special Master noted, based on the admitted facts, "the potential laundry list of criminal charges [Fagan] could have, and may still face, is substantial," and it is not clear to this Court why Fagan apparently has not been criminally prosecuted.

As to mitigation, the Special Master concluded that Fagan admitted the facts and rule violations as alleged, but "since the

9

potential sanction . . . depend[ed] on matters not required to be pled in the complaint," Fagan nonetheless should have the opportunity to submit evidence in mitigation, even though he had defaulted by failing to timely answer the formal complaint. The Special Master stated that in his view, "a default under the Bar Rules is similar to a default judgment" where the defendant has "admitted each and every material allegation of the complaint, except as to the amount of damages suffered." The Special Master thus "reached out" on his own to Fagan by e-mailing him and asked Fagan if he wanted to submit evidence of mitigating circumstances in this case. Fagan responded by e-mail, stated that he "sincerely appreciate[d] the offer," mentioned some mitigating factors, and said that he was "not requesting a hearing with respect to mitigation" and did "not plan on ever returning to the practice of law." Based on Fagan's e-mailed response, the Special Master determined that although Fagan could have presented evidence of mitigating factors, he waived his right to do so. The Special Master also concluded that, in any event, Fagan's

actions in this matter warranted a severe punishment.[1]

In sum, the Special Master concluded that Fagan used his position as in-house counsel to defraud and swindle his client out of a substantial amount of money, and that in doing so he violated his duties to his client and to the legal profession. Thus, the Special Master recommended that Fagan be disbarred. See *In the Matter of Cheatham*, 304 Ga. 645, 646 (820 SE2d 668) (2018) (disbarring lawyer who converted client funds to his own use and failed to respond to disciplinary authorities); *In the Matter of Snipes*, 303 Ga. 800, 801 (815 SE2d 54) (2018) (disbarring lawyer who settled client's

---

[1] We note that it is possible for a Special Master to open default in certain circumstances. See OCGA § 9-11-55 (b) (provision for opening default); Bar Rule 4-221.2 (b) ("In all proceedings under this Chapter occurring after a finding of Probable Cause as described in Rule 4-204.4, the procedures and rules of evidence applicable in civil cases under the laws of Georgia shall apply . . . ."); *In the Matter of Turk*, 267 Ga. 30, 30 (471 SE2d 842) (1996) (citing former Rule 4-221 (e) (2), which has since been moved to Rule 4-221.2 (b), for the proposition that "OCGA § 9-11-55 (b) applies in disciplinary proceedings"). But the Bar Rules do not give the Special Master authority to sua sponte invite and receive any evidence, including mitigation, when a party is currently in default. See Bar Rule 4-208.1 (b) (unless Notice of Discipline is rejected, respondent shall be in default and "shall have no right to any evidentiary hearing"). We therefore conclude that the Special Master should not have solicited such evidence by e-mail, but agree with the Special Master's ultimate conclusion that Fagan waived his right to present mitigating evidence in this matter by virtue of his default.

case without client's knowledge and converted funds to his own personal use and failed to respond to disciplinary authorities); *In the Matter of Mathis*, 297 Ga. 867, 868 (778 SE2d 793) (2015) (disbarring lawyer who misappropriated client funds that had been wired to him in advance of real estate closing and failed to respond to disciplinary authorities); *In the Matter of Jones*, 296 Ga. 151, 152 (765 SE2d 360) (2014) (disbarring lawyer who absconded with client funds and failed to respond to disciplinary authorities); *In the Matter of Utley*, 270 Ga. 88, 88 (507 SE2d 727) (1998) (disbarring lawyer who deliberately misappropriated estate funds and failed to respond to disciplinary authorities).

Based on our review of the record, we agree with the Special Master that Fagan has violated Rules 1.7, 1.8 (b), 1.15 (I), 8.4 (a) (4), and 9.3, and that disbarment is the appropriate sanction in this disciplinary matter. Accordingly, Glen Roy Fagan is disbarred. Fagan is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*

Decided July 6, 2022.

Disbarment.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, Andreea N. Morrison, Assistant General Counsel State Bar*, for State Bar of Georgia.