NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 14, 2024

S23Y0622.  IN THE MATTER OF JAMES W. DAVIS, III.

PER CURIAM.

This disciplinary matter is before the Court on a Notice of Discipline, recommending the disbarment of James W. Davis, III,[1] (State Bar No. 283824) for his role in intercepting a multi-million-dollar payment from an insurance company to its policy holder.  As reflected in the record, Davis acknowledged service of the State Bar's Notice of Discipline for Disbarment ("Notice of Discipline") on March 27, 2023, but failed to file a Notice of Rejection.  Therefore, Davis is in default, has waived his right to an evidentiary hearing, and is subject to such discipline and further proceedings as may be

_____

[1] Davis was admitted to the State Bar in 1997 and was authorized to practice law at the time of the conduct at issue, but has since become an inactive member of the State Bar.

determined by this Court. See Bar Rule 4-208.1 (b).[2]

The facts, as deemed admitted by Davis's default,[3] are as follows.[4] In December 2018, Coface North America Insurance Company (the "Insurer"), a company specializing in commercial trade credit insurance, agreed to pay one of its policyholders a claim-related payment in the amount of $3,093,085.50. On December 18, 2018, the Insurer requested payment instructions from the policyholder's insurance broker and received payment instructions via email from a policyholder representative, which included wire transfer information for a bank account in the name of the policyholder at Citibank, N.A. On December 19, 2018, an unknown individual purporting to be the same policyholder representative

---

[2] This rule provides that, "[u]nless the Notice of Discipline is rejected by the respondent as provided in Rule 4-208.3, (1) the respondent shall be in default; (2) the respondent shall have no right to any evidentiary hearing; and (3) the respondent shall be subject to such discipline and further proceedings as may be determined by the Supreme Court of Georgia."

[3] See *In the Matter of Head*, 317 Ga. 512, 512 (893 SE2d 706) (2023) (noting that, because the respondent attorney failed to file a Notice of Rejection, the underlying facts were "deemed admitted by [his] default").

[4] The record includes the State Bar's Notice of Discipline, a memorandum of grievance issued by the State Bar to Davis, and orders filed in a lawsuit against Davis and others in the United States District Court for the Northern District of Georgia.

sent an email to the Insurer, instructing the Insurer to disregard the payment instructions transmitted the previous day and to instead wire the funds to a bank account held by the policyholder's attorney. Attached to the email was a letter of authorization and declaration that included new wiring instructions to a Wells Fargo account in the name of J. Davis – Attorney at Law, LLC IOLTA ("Davis's IOLTA"). On December 21, 2018, the Insurer wired $3,093,085.50 to Davis's IOLTA account.

On December 31, 2018, the Insurer was informed that its emails with the policyholder had been compromised and that the funds at issue were never received by the policyholder. The Insurer reported the incident to Citibank and the FBI, and on January 3, 2019, counsel for the Insurer sent a "cease and desist" letter to Davis demanding return of the funds. The Insurer was subsequently notified that Wells Fargo credited $2,540,319.30 from Davis's IOLTA account to the Insurer, which left $552,755.20 unaccounted for by Davis. Additionally, the payment from Davis's IOLTA account to the Insurer included $3,500.00 belonging to clients of

3

Davis, of which Davis was aware.

Davis initially denied any knowledge of or participation in the misappropriation of these funds and claimed that he was also a victim in this scheme. However, the factual allegations of the Notice of Discipline—which Davis has admitted by virtue of his default—state that Davis was "a knowing and intentional participant in the interception and theft of the [funds]" and "knowingly used his attorney trust account to carry out the interception and theft of the [funds]."[5]

The State Disciplinary Board's (the "Board") memorandum of grievance, which is also included in the record, demonstrates that the Board initiated a grievance against Davis based upon information suggesting that Davis "may have violated one or more of the Georgia Rules of Professional Conduct." See Bar Rule 4-203 (2). Specifically, the Board learned that, on January 14, 2019, the Insurer filed a lawsuit against Davis and numerous "John Does" in

---

[5] The record does not reflect whether Davis was ever charged with any crimes arising from this conduct.

the United States District Court for the Northern District of Georgia (the "federal case"), raising claims for conversion, RICO, common law fraud, and civil conspiracy, among others.

On June 21, 2019, the district court issued an order in the federal case addressing several motions filed by the parties, including Davis's motion to dismiss and the Insurer's motion for a preliminary injunction. The district court granted the Insurer's request for injunctive relief and partly granted Davis's motion to dismiss, but only as to certain of the Insurer's claims. In so ruling, the district court observed that, in litigating the federal case, Davis had explicitly acknowledged and admitted to the following: (1) "in his role as an attorney," Davis "serves as a paymaster" for certain entities, and it was in this role as paymaster that he came to acquire the funds at issue from the Insurer; (2) "[t]he first transfer of $3,093,085.50 was wired to Mr. Davis's IOLTA [a]ccount on December 21, 2018"; (3) Davis was "informed by Citibank that the transfer was the result of false wiring instructions"; (4) Wells Fargo returned funds in the amount of $2,540,319.30 to the Insurer; (5)

"[f]unds in the amount of $552,766.20 were paid out to Mr. Davis as his fee for services rendered as paymaster for what he believed was a legitimate transaction" with the Insurer; (6) Davis "used his fee monies to pay outstanding bills/debts"; and (7) Davis's "involvement in the subject transaction was in his role as an attorney with the law firm J. Davis, Attorney at Law, LLC." The district court held that Davis's "version of the facts" set forth above was "a binding judicial admission." The record reflects that the Insurer and Davis later settled the federal case, and the case was administratively closed in October 2019.

Having reviewed the record and considered the facts deemed admitted by Davis's default, the State Disciplinary Board found probable cause to believe that Davis violated Rules 1.15 (I), 1.15 (II) (a)[6], and 8.4 (a) (4). The maximum sanction for a violation of Rules

---

[6] Based on the underlying facts, it does not appear that Davis violated Rule 1.15 (II) (a), which provides that

> [e]very lawyer who practices law in Georgia, whether said lawyer practices as a sole practitioner, or as a member of a firm, association, or professional corporation, and who receives money or property on behalf of a client or in any other fiduciary capacity,

1.15 (I), 1.15 (II) (b), and 8.4 (a) (4) is disbarment.

As aggravating factors, the Board considered Davis's substantial experience in the practice of law and, as a mitigating factor, his absence of prior disciplinary history. The Board advised that Standard 4.11 of the American Bar Association's Annotated Standards for Imposing Lawyer Sanctions was applicable to Davis's violations of Rules 1.15 (I) and 1.15 (II), which provides that disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. See ABA Standards for Imposing Sanction 4.11. See also *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996) (stating that this Court looks to the ABA Standards for guidance in determining appropriate disciplinary sanction). The Board

---

shall maintain or have available one or more trust accounts as required by these Rules. All funds held by a lawyer for a client and all funds held by a lawyer in any other fiduciary capacity shall be deposited in and administered from a trust account.

More likely, Davis violated Rule 1.15 (II) (b), which provides, in pertinent part, that "[n]o funds shall be withdrawn from such trust accounts for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such." This discrepancy ultimately has no bearing on the recommended discipline in this case.

concluded that Davis "knowingly converted the property of his clients when he included client funds from his trust account to make partial reimbursement of the funds at issue."

The Board further advised that Standard 5.11 (b) of the ABA Standards for Imposing Sanctions was applicable to Davis's violation of Rule 8.4 (a) (4), which provides that disbarment is generally appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. See ABA Standards for Imposing Sanction 5.11 (b). See also *In the Matter of Morse*, 266 Ga. at 653. The Board concluded that "[t]hrough his knowing and intentional participation in the interception and theft of the [funds at issue], [Davis] engaged in intentional conduct involving dishonest, fraud, deceit, or misrepresentation that seriously adversely reflects on [Davis's] fitness to practice."

Having reviewed the record and considered Davis's factual admissions herein, we conclude that disbarment is the appropriate

sanction in this disciplinary matter and is consistent with similar cases in which an attorney utilized fraud to misappropriate funds and defaulted during the disciplinary process. See, e.g., *In the Matter of Fagan*, 314 Ga. 208, 213 (876 SE2d 242) (2022) (disbarring attorney who engaged in professional misconduct involving dishonesty and fraud, misappropriated client funds, and failed to respond to the formal complaint); *In the Matter of Cheatham*, 304 Ga. 645, 646 (820 SE2d 668) (2018) (disbarring attorney who converted client funds to his own use and failed to respond to disciplinary authorities); *In the Matter of Mathis*, 297 Ga. 867, 868 (778 SE2d 793) (2015) (disbarring attorney who misappropriated client funds that had been wired to him in advance of a real estate closing and failed to respond to disciplinary authorities). Accordingly, it is hereby ordered that the name of James W. Davis, III be removed from the rolls of persons authorized to practice law in the State of Georgia. Davis is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*