312 Ga. 282
FINAL COPY

S21Y0608. IN THE MATTER OF TIMOTHY WALTER BOYD.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the special master, Laura J. Murphree, recommending that the Court disbar Timothy Walter Boyd (State Bar No. 072790) from the practice of law for his violations of Rules 1.2, 1.3, 1.4, 1.5, 1.15 (I), 4.1, and 8.4 of the Georgia Rules of Professional Conduct, see Bar Rule 4-102 (d), in connection with his handling of one client matter. This Court recently rejected Boyd's third petition for voluntary discipline as to a different disciplinary matter. See *In the Matter of Boyd*, 310 Ga. 1, 4-5 (849 SE2d 172) (2020).

In this case, Boyd, who has been a member of the Georgia Bar since 1992 and the Virginia Bar since 1988, failed to answer the

properly served formal complaint[1]; therefore, the facts set out in that complaint were deemed admitted. See Bar Rule 4-212 (a). Those facts are that a woman hired Boyd to prepare her last will and testament, but passed away in 2017 before the will was completed. After the woman's death, her parents, who lived in Florida, traveled to Georgia for the funeral. The deceased's father submitted a claim to the deceased's life insurance provider for payment owed for services provided at the deceased's residence following her death. The insurance company paid the claim in early December 2017 by issuing two checks made payable to the estate in the amounts of $1,000 and $6,280.

While in Georgia, the deceased's parents (accompanied by a friend of the deceased) met with Boyd and retained him to assist the father in qualifying and serving as the administrator of the deceased's estate. The father provided the insurance company's

---

[1] The formal complaint ultimately was served by publication pursuant to Bar Rule 4-203.1 (b) (3) (ii) after Boyd failed or refused to acknowledge receipt of the formal complaint via mail, and an attempt at personal service was unsuccessful.

checks to Boyd and directed him to endorse those checks to the service provider as payment for its services. Although Boyd agreed to the representation, he failed to provide the deceased's father with an hourly rate for his legal services and instead advised that his fee would be between $2,000 and $5,000, depending upon the work that needed to be completed. The parties agreed that the fee would be paid from the estate, but Boyd never provided an engagement letter detailing the scope and proposed costs of the representation, despite the father's repeated requests for it.

With respect to the representation, Boyd recommended that the father (hereinafter, "client") give him power of attorney to complete the final actions of the deceased's estate because the client resided in Florida. The client agreed, and in January 2018, he signed a Limited Power of Attorney form that authorized Boyd to make decisions concerning only the real estate within the estate. Boyd attended a closing of the sale of the deceased's residence in February but failed to provide the client with any closing documents. The client eventually obtained a copy of the closing documents from the

3

real estate agent and discovered an unauthorized debit item on the settlement statement in the amount of $14,397.50 for "Seller Probate Attorney Fees to Boyd Law Group, LLC." The client had not authorized the debit for attorney fees, and Boyd had never advised him of the debit. In the meantime, despite the client directing him in December 2017 to pay the service provider for its services and making repeated follow-up requests that he do so, Boyd did not pay the service provider until the end of February 2018.

Around the same time, the client asked his deceased daughter's friend to have Boyd give her the checkbook for a bank account Boyd opened at Piedmont Bank with the proceeds from the sale of the deceased's residence, along with copies of all checks received for the estate, the life insurance policy, and any jewelry appraisals. Boyd met the friend at the bank and added her to the bank account. Once the friend obtained online access to the account, she confirmed that (1) the proceeds from the mortgage closing were deposited into the account; (2) Boyd had written two checks payable to "Cash" in the amount of $5,750 and $8,900 from that account; (3) the account

4

indicated that Boyd used a separate check to pay the service provider (rather than endorsing the insurance company checks as instructed by the client); (4) the two checks from the insurance company were never deposited into an estate account; (5) Boyd never opened an estate account; and (6) Boyd was the only authorized signatory listed on the account. After the friend notified the client of her findings, he instructed her to immediately close the bank account and deposit all funds into a new estate account he had established, which she did.

In March 2018, the client sent Boyd correspondence requesting an itemized bill for services and fees related to the residential mortgage closing, documentation of any and all payments received by the estate, and supporting documents related to the two "cash" withdrawals from the Piedmont Bank account. The day after the client sent the correspondence, the friend learned that Boyd had deposited the two checks from the insurance company, which were made out to the estate, into a different unauthorized bank account located at Fifth Third Bank — an account on which Boyd was the

5

only signatory and about which he never advised the client. When confronted about this issue, Boyd provided to the friend a cashier's check in the aggregate amount of $7,280 (the total of the insurance company's two checks), which she deposited into the estate account.

After the client received no response from Boyd to his letter, he sent additional correspondence in April 2018, requesting a full accounting and additional detailed information about the improper and unauthorized fees showing on the settlement statement, the two checks Boyd wrote on the Piedmont Bank account made payable to cash, and the funds improperly deposited into the unauthorized account at Fifth Third Bank. Boyd never responded to the client, provided him an accounting, or refunded any unearned fees.

Based on these facts, the special master found that Boyd violated Rule 1.2 by failing to abide by the client's instructions with respect to the representation; Rule 1.3 by failing to promptly pay the service provider, provide mortgage closing documents to the client, and establish a separate estate account for the property sale proceeds; Rule 1.4 by failing to notify the client of the fees or cash

6

payments, to inform him of the bank accounts and the withdrawals from them, and to provide an itemized accounting of disbursements made on behalf of the estate; Rule 1.5 by collecting without his client's knowledge or consent a fee of $14,397.50 from the mortgage closing proceeds and two other fees through cash withdrawals from the estate proceeds — fees totaling $29,047.50, which is not a customary fee for the legal services provided; Rule 1.15 (I) by keeping the funds associated with the estate in a checking account rather than an approved trust account, disregarding repeated requests by the service provider and the client to pay amounts owed, and failing to provide the accounting of the funds held for the estate despite the client's requests; Rule 4.1 by falsely advising the real estate agent that fees of $14,397.50 were authorized and should be disbursed to him as fees in conjunction with the real estate closing; and Rule 8.4 by making false statements to the real estate agent regarding his entitlement to the $14,397.50 fee, concealing from the client the receipt of that fee and the two other withdrawals, and

7

concealing from the client the existence of the various unauthorized bank accounts.

In considering the appropriate level of discipline for Boyd's misconduct, the special master referenced the ABA Standards for Imposing Lawyer Sanctions, see *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996), noting that, under those standards, disbarment is appropriate when a lawyer causes injury or potential injury to a client or causes a significant or potentially significant adverse effect on the legal system by knowingly converting client property, see Standard 4.1; knowingly failing to perform services for a client, see Standard 4.4; knowingly deceiving a client with the intent to benefit the lawyer or another, see Standard 4.6; and knowingly engaging in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer, see Standard 7.1.[2] The special master found no factors in mitigation of

---

[2] The special master also referenced ABA Standard 6.11, which provides that disbarment is appropriate when an attorney, with the intent to deceive the court, submits a false document or improperly withholds material information, causing serious or potentially serious harm to a party or on the

8

discipline, but she noted that the record showed the following factors in aggravation: (1) prior disciplinary history, in that Boyd received a formal letter of admonition from the State Bar's Investigative Panel (now the State Disciplinary Board) in 2011, an Investigative Panel reprimand in 2012, and an Investigative Panel reprimand in 2014; (2) dishonest or selfish motive; (3) a pattern of misconduct based on this and prior offenses; (4) multiple offenses committed within this case; (5) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the Bar; (6) vulnerability of the victim, as an elderly parent burying his only child; and (7) substantial experience in the practice of law. See Standard 9.22 (a), (b), (c), (d), (e), (h), and (i). Noting that this Court has disbarred attorneys facing similar charges, see *In the Matter of Holliday*, 308 Ga. 216 (839 SE2d 518) (2020) (disbarring attorney for violations of a variety of Rules including Rules 1.2, 1.3, and 8.4 (a) (4) in multiple client matters); *In the Matter of Johnson*,

---

legal proceeding. This standard is not applicable to these circumstances, and has no bearing on our disposition.

9

308 Ga. 233 (838 SE2d 755) (2020) (same); *In the Matter of Moore*, 303 Ga. 296 (811 SE2d 343) (2018) (same); *In the Matter of Watkins*, 302 Ga. 226 (805 SE2d 816) (2017) (same), the special master recommended disbarring Boyd.

Based on our review of the record, we agree that disbarment is an appropriate sanction for Boyd's actions in this case. Accordingly, it is hereby ordered that the name of Timothy Walter Boyd be removed from the rolls of persons authorized to practice law in the State of Georgia. Boyd is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*

Decided August 10, 2021.

Disbarment.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, Wolanda R. Shelton, Assistant General Counsel State Bar*, for State Bar of Georgia.