NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 31, 2023

S23Y0492, S23Y0493, S23Y0494, S23Y0495, S23Y0496. IN THE MATTER OF IAN ZIMMERMAN.

PER CURIAM.

These disciplinary matters are before the Court on the consolidated report and recommendation of Special Master Quentin L. Marlin that Ian Zimmerman (State Bar No. 853012) be disbarred for his violations of Rules 1.2, 1.3, 1.4, 1.15 (I), 1.16, 4.1, and 8.4 (a) (4) of the Georgia Rules of Professional Conduct ("GRPC"), found in Bar Rule 4-102 (d). These matters arose from five different client matters leading to five different complaints. Despite acknowledging service of each of those complaints, claiming to have provided timely answers, and being given additional time to support that claim, Zimmerman, who has been a member of the State Bar since 2011, never provided evidence that he in fact filed timely answers with the

State Bar. After holding a hearing, which Zimmerman attended, the Special Master found Zimmerman in default and, pursuant to Bar Rule 4-212 (a), deemed Zimmerman to have admitted the facts alleged and violations charged in the formal complaints. Zimmerman has filed no exceptions to the Special Master's report and recommendation. Based on the record before us, we agree that Zimmerman should be disbarred.

These cases arise from Zimmerman's representation of clients in personal injury cases, wherein he failed to communicate with the clients and did not disburse the full amount of settlement proceeds upon the settlement of each matter. With regard to State Disciplinary Board Docket ("SDBD") No. 7306, Zimmerman represented a client who had been represented by an attorney at a different law firm, with whom the client had signed a contract entitling the law firm to a 33-percent attorneys' fee plus costs of litigation upon termination of services. The client's claim with an insurance company settled for $25,000, and the law firm that had represented the client submitted an attorney lien to the insurance

2

company for $8,355.87. Zimmerman contacted the client's previous attorney and entered into an agreement whereby the law firm would release the attorney lien in exchange for Zimmerman paying 80 percent of the law firm's fees and costs and resolving the client's other outstanding liens and bills. Zimmerman advised the previous attorney that he would send a check overnight as soon as the settlement check cleared his bank. Zimmerman received and deposited the settlement check, but he did not respond to most of the former attorney's numerous inquiries regarding payment. When he did respond, he said he would send the funds owed to the law firm, but he never did.

The Special Master concluded that Zimmerman violated Rule 1.15 (I) by failing to disburse the funds owed to the law firm from the client's settlement; and violated Rule 8.4 (a) (4) by misrepresenting to the attorney that he would disburse the amount owed to the law firm once the settlement check cleared his bank account and subsequently failing to do so.

3

With regard to SDBD No. 7307, Zimmerman represented a client suing an individual and three different insurance companies in a personal injury matter. The client's claims against the individual and two of the insurance companies settled for $11,000, and the client executed a release of her claims against those parties. Zimmerman prepared a settlement breakdown whereby the client was to receive $3,583.54, Zimmerman was to receive $3,666.30, and the remainder was to be paid to the client's medical providers. Zimmerman advised the client that he would contact her medical providers to determine how much money was owed for her treatment, and that he would disburse any remaining funds to her after her medical bills were paid. Zimmerman disbursed the initial $3,583.54 to the client, but he failed to pay all of her medical providers and failed to disburse any remaining funds to her. Moreover, the client's claim against the third insurance company later settled and she executed a release of claims, but Zimmerman failed to disburse those settlement funds to her. Zimmerman did not respond to the client's attempts to contact him regarding the

4

settlement funds owed to her and her medical providers, and he failed to disburse to the client the entire amount due to her.

The Special Master concluded that Zimmerman violated Rule 1.4 by failing to respond to the client's requests for information about the settlement funds; Rule 1.15 (I) by failing to disburse the funds owed to the client and failing to pay her medical providers; and Rule 8.4 (a) (4) by withholding funds from the settlement of the client's claims that were owed to her or her medical providers.

In SDBD No. 7339, from the outset of the representation, Zimmerman's client attempted to contact him about her case on numerous occasions, but Zimmerman failed to respond or provide updates. Zimmerman told the client that he sent correspondence, including a demand letter, to the tortfeasor's insurance company. Although the client terminated Zimmerman as her attorney, Zimmerman told the client that he was required to continue working on her case because he had already sent a demand to the insurance company. But Zimmerman sent a demand to the insurance company only after the client had terminated his services, and he continued

to communicate with the insurance company on the client's behalf without her authority. The client hired a new attorney, who requested the file from Zimmerman, but Zimmerman failed to return the file to the client or the new attorney, and later accepted the policy limit offered by the insurance company on behalf of the client. The new attorney requested by email that Zimmerman cease and desist any further action on the case because he had been terminated. Nonetheless, Zimmerman sent a letter to the insurance company requesting that it forward the settlement check and a limited liability release to his firm. The new attorney again emailed Zimmerman requesting the file and advising him to stop contacting the client. Zimmerman sent a letter to the insurance company asserting a lien on the settlement proceeds. He finally turned over the file to the new attorney, but it did not contain correspondence, medical records, or the demand sent to the insurance company. Zimmerman then sent a letter to the insurance company stating that he had resolved the dispute with the new attorney and

requesting that the insurance company disburse $7,500 to him and the remainder to the client and her new attorney.

The Special Master concluded that Zimmerman violated Rule 1.2 (a) by failing to consult with the client about the scope and objectives of the representation and continuing to act on her behalf without authority after she terminated him; Rule 1.3 by failing to perform work on the client's case; Rule 1.4 by failing to communicate with the client or respond to her requests for information; and Rule 1.16 by failing to withdraw from representation once the client terminated him and failing to promptly return her file. Moreover, the Special Master found that Zimmerman violated Rule 4.1 by continuing to negotiate with the insurance company about the case after he was terminated, thereby misrepresenting to the insurance company that he was still the client's attorney. Finally, the Special Master again found that Zimmerman violated Rule 8.4 (a) (4) by misrepresenting to the client that he had sent a demand to the insurance company before being terminated and by misrepresenting

7

to the insurance company that he was still her attorney after he was terminated.

In SDBD Nos. 7340 and 7341, two clients initially retained a different law firm to represent them, which referred their cases to Zimmerman. Zimmerman settled the cases and settlement checks were disbursed to him by the insurance company. He cashed the checks but failed to inform the clients, disburse the amounts due to them, pay their medical providers, or respond to their numerous attempts to contact him about the settlement funds.

The Special Master found that Zimmerman violated Rule 1.2 by failing to consult with the clients about the disbursement of settlement funds to them and their medical providers; Rule 1.3 by failing to promptly and diligently disburse the funds to the clients and their medical providers; Rule 1.4 by failing to respond to requests for information about the settlement funds; Rule 1.15 (I) by failing to disburse the funds owed to the clients and their medical providers; and Rule 8.4 (a) (4) by withholding funds from the clients' settlements that were owed to them or to their medical providers.

8

In connection with each matter, the Special Master noted that the maximum sanction for a violation of Rules 1.2, 1.3, 1.15 (I), 4.1, and 8.4 (a) (4) is disbarment, and the maximum sanction for a violation of Rules 1.4 and 1.16 is a public reprimand.

Turning to the appropriate level of discipline, the Special Master correctly noted that this Court generally looks to the American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") for guidance in determining punishment. See *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996). ABA Standard 3.0 provides for consideration of the following factors: the duty violated; the lawyer's mental state; the potential or actual injury caused by the lawyer's misconduct; and the existence of aggravating or mitigating factors. As to the duty violated, the Special Master noted that the ABA Standards assume that the most important duties are the obligations a lawyer owes to clients, including the duty to preserve the client's property and the duty of diligence.

The Special Master found that Zimmerman violated the duty of diligence in his representation of his clients and the duty to fulfill his obligations with regard to client property in his possession. The Special Master further noted that lawyers owe duties to the general public, including the duty not to engage in conduct involving dishonesty, fraud, or interference with the administration of justice. The Special Master found that Zimmerman engaged in knowing and intentional dishonest conduct with his clients and with third parties. The Special Master noted that the extent of the injury is defined by the type of duty violated and the extent of actual or potential harm; he concluded that Zimmerman's clients and third parties suffered actual injury as a result of his actions.

The Special Master recited that disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client, see ABA Standard 4.11; knowingly fails to perform services for a client or engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to the client, see ABA Standard 4.41;

10

knowingly deceives a client with the intent to benefit the lawyer or another person, see ABA Standard 4.61; makes a false statement, submits false information, or improperly withholds material information with the intent to deceive the court, and causes a significant or potentially significant adverse effect on the legal proceeding, including in the context of disciplinary proceedings, see ABA Standard 6.11; or knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, see ABA Standard 7.1.

In aggravation, the Special Master considered Zimmerman's prior disciplinary offense, for which he received a formal letter of admonition for violations of Rules 1.2, 1.3, 1.4, and 1.15 (I), see ABA Standard 9.22 (a); his dishonest or selfish motive shown by his receipt of financial benefit from his misconduct, see ABA Standard 9.22 (b); his repeated pattern of misconduct, see ABA Standard 9.22 (c); his violation of seven provisions of the GRPC in five separate matters, see ABA Standard 9.22 (d); his bad-faith obstruction of the disciplinary proceeding by intentionally failing to comply with the

11

disciplinary rules and the Special Master's directives, see ABA Standard 9.22 (e); his false statement that he filed answers to the formal complaints, see ABA Standard 9.22 (f); his refusal to acknowledge the wrongful nature of his conduct, see ABA Standard 9.22 (g); his substantial experience in the practice of law, as a member of the State Bar since 2011, see ABA Standard 9.22 (i); and his indifference to making restitution, see ABA Standard 9.22 (j). The Special Master found no mitigating facts applicable to this case.

Finally, the Special Master concluded that Zimmerman ignored the gravity of the disciplinary proceedings by failing to respond to the formal complaints, such that he was in default and should be disbarred based on the violations he was deemed to have admitted. The Special Master noted that this Court has previously disbarred attorneys in matters where they abandoned or neglected client matters, failed to perform work for their clients, and engaged in dishonest and deceitful conduct by converting funds belonging to clients and third parties and failing to protect third-party interests in funds in the attorney's possession. Neither Zimmerman nor the

State Bar filed exceptions to the Special Master's report and recommendation or requested review by the Review Board.

Having reviewed the record, we agree that disbarment is the appropriate sanction and that disbarment is consistent with prior cases in which an attorney has admitted, by virtue of default, to violating provisions of the GRPC that carry disbarment as a sanction and has failed to participate fully in the disciplinary process. See *In the Matter of Power*, 314 Ga. 504 (877 SE2d 601) (2022) (disbarring defaulting attorney for violations of Rules 1.2 (a), 1.3, 1.4, 1.5 (a), 1.15 (I), 1.15 (II), 1.15 (III), 1.16 (d), and 9.3); *In the Matter of Boyd*, 312 Ga. 282 (862 SE2d 135) (2021) (disbarring defaulting attorney for violations of Rules 1.2, 1.3, 1.4, 1.5, 1.15 (I), 4.1, and 8.4); *In the Matter of Berry*, 310 Ga. 158 (848 SE2d 71) (2020) (disbarring defaulting attorney for violations of Rules 1.2 (a), 1.3, 1.4, 1.5 (b), 1.5 (c) (2), 1.15 (I) (a), 1.15 (b), and 8.4 (a) (4)); *In the Matter of Bennett*, 307 Ga. 679 (837 SE2d 298) (2019) (disbarring defaulting attorney for violations of Rules 1.2, 1.3, 1.4, 1.15 (I), 3.2, and 8.4 (a) (4)); *In the Matter of Thompson*, 306 Ga. 618 (832 SE2d

334) (2019) (disbarring defaulting attorney for violations of Rules 1.2 (a), 1.3, 1.4, and 1.16 (d)).[1] Accordingly, it is hereby ordered that the name of Ian Zimmerman be removed from the rolls of persons authorized to practice law in the State of Georgia. Zimmerman is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*

---

[1] In his report and recommendation, the Special Master helpfully noted many of these same cases in recommending disbarment.