**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: January 21, 2026

S26Y0121.  IN THE MATTER OF NUBIYN MATAMALAKI MOSI MZEKEWE.

PER CURIAM.

This disciplinary matter is before the Court on the Report and Recommendation of Special Master Adam Hames, who recommends that Nubiyn Matamalaki Mosi Mzekewe (State Bar No. 519898) be disbarred for his conduct in this matter. The Special Master concluded that Mzekewe, who has been a member of the Bar since 2010, violated Rules 1.2(a), 1.4(a)(1) and (4), 1.5(a) and (b), 1.15(I)(a) and (d), 1.15(II)(b), and 3.1 of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") found in Bar Rule 4-102(d) by improperly expanding the scope of representation, pursuing warrantless claims, collecting an unwarranted and unreasonable fee, failing to hold disputed funds separate from his own, and withdrawing funds for his personal use. Neither party has filed

exceptions in this Court, and having reviewed the record, we agree with the Special Master that disbarment is the appropriate sanction.

1. *Procedural History*

On April 3, 2024, the State Bar filed a formal complaint in State Disciplinary Board Docket ("SDBD") No. 7868, charging Mzekewe with violations of Rules 1.2(a);[1] 1.4(a)(1);[2] 1.4(a)(4);[3] 1.5(a);[4]

---

[1] Rule 1.2(a) provides, in pertinent part, that "a lawyer shall abide by a client's decisions concerning the scope and objectives of representation and … shall consult with the client as to the means by which they are to be pursued."

[2] Rule 1.4(a)(1) provides, in pertinent part, that a lawyer shall "promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(h), is required."

[3] Rule 1.4(a)(4) provides, in pertinent part, that a lawyer shall "promptly comply with reasonable requests for information."

[4] Rule 1.5(a) provides that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses," followed by a list of factors to be considered in determining reasonableness.

1.5(b);[5] 1.15(I)(a);[6] 1.15(I)(d);[7] 1.15(II)(b);[8] and 3.1(b).[9] The maximum sanction for a violation of Rules 1.2(a), 1.15(I)(a) and (d), and 1.15(II)(b) is disbarment. The maximum sanction for a violation of Rules 1.4(a)(1) and (4), 1.5(a) and (b), and 3.1 is a public reprimand. Mzekewe filed a response in which he admitted some of the State Bar's factual allegations but denied all alleged Rule violations. Mzekewe acknowledged that his contingency fee was in dispute and

[5] Rule 1.5(b) provides that "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation … [a]ny changes in the basis or rate of the fee or expenses shall also be communicated to the client."

[6] Rule 1.15(I)(a) provides that "[a] lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property."

[7] Rule 1.15(I)(d) provides, in pertinent part, that "[i]f a dispute arises concerning [a lawyer's and a client's or third person's] respective interests [in funds held by the lawyer], the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

[8] Rule 1.15(II)(b) states, in pertinent part, that "[n]o funds shall be withdrawn from such trust accounts for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such."

[9] Rule 3.1(b) states that a lawyer shall not "knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law."

3

sought to submit the matter to arbitration.

Less than two weeks prior to the scheduled hearing, Mzekewe filed a motion for continuance in which he stated that he intended to make an offer of settlement followed by a petition for voluntary discipline if the offer was acceptable to the Bar. He stated that if the offer was not accepted, he would need more time to hire an expert. Given the untimely nature of the motion and the stated reason for the request, the Special Master declined to grant the continuance. On May 12, 2025, Mzekewe's counsel filed a motion to withdraw. The Special Master granted the motion, canceled the hearing, and gave Mzekewe until May 27, 2025, to hire new counsel.

The Special Master denied Mzekewe's two subsequent requests for additional time to hire counsel. The second request was made after 5:00 p.m. on May 27, 2025. In that request, Mzekewe requested more time to hire counsel and attached a letter from his therapist diagnosing him with mental health issues and recommending that Mzekewe "take two weeks of immediate medical leave from work to rest, stabilize, and attend to both his physical and emotional well-

being." The Special Master denied this request and scheduled the hearing for June 16, 2025. The hearing proceeded on that date without Mzekewe, who failed to appear. In a post-hearing response, Mzekewe contended that he had not attended the hearing because of "anxiety and related health conditions." While noting that Mzekewe's response raised questions about his competency to practice law under Rule 4-104(a), which states that "[m]ental illness, cognitive impairment, alcohol abuse, or substance abuse, to the extent of impairing competency as a lawyer, shall constitute grounds for removing a lawyer from the practice of law," the Special Master determined that he could not recommend that Mzekewe be removed from the practice of law pursuant to Rule 4-104(a). The Special Master later submitted his report and recommendation.

2. *Special Master's Report and Recommendation*

(a) *Findings of Fact*

The Special Master recounted that the client entered into an agreement for legal services with Mzekewe because he wanted to be appointed as conservator for his brother, who was a disabled

veteran.[10] Though the client had been appointed as his brother's guardian, a Veteran's Affairs ("VA") fiduciary was appointed as conservator[11] (the "VA guardian") and was responsible for distributing the brother's VA disability benefits. The agreement between Mzekewe and the client stated, in relevant part, that Mzekewe would "provide any and all legal services necessary concerning the proper care and accounting of funds" for the benefit of the client's brother to include the "pursuit of getting an accounting of funds, mail and other personal property from VA fiduciary … removing VA fiduciary, and making funeral arrangements." The flat fee for the work was $3,000. Mzekewe advised the client that the VA guardian had improperly been taking one percent more commission than she was entitled. A probate court staff attorney explained to

---

[10] Also listed as clients in the agreement are the client's mother and his other brother. However, the client testified that his mother never met with Mzekewe or spoke with him, and that her name was included on the agreement because "she was just brought up in a lot of conversation" and that the client had advised Mzekewe that he "was basically doing this [seeking conservatorship] for [his] mother." The client's other brother passed away during the course of the events at issue here.

[11] A VA fiduciary performing the work of a state conservator is called a "guardian."

Mzekewe that the guardian was not a VA fiduciary, but a VA guardian appointed by the probate court, and explained the different rates of compensation for both of those roles. Despite these communications, Mzekewe sent a demand letter to the VA guardian, alleging that she was misappropriating funds because she had received a commission greater than the four percent commission authorized by 38 USC §5502(a)(2). The VA guardian sent Mzekewe an email providing him with the probate court order authorizing her to receive a five percent commission and explained that OCGA § 29-7-15 authorized her to receive a commission in that amount. The VA guardian warned Mzekewe that she would contest his allegations, characterizing them as "malicious and frivolous" and that she would seek attorney fees.

Mzekewe then entered into a revised agreement with the client, the purpose of which was the pursuit of "federal claims on FTCA, Federal Preemption, 14th Amendment and Procedural Due Process, Commerce Clause and state claims against [the] fiduciary." The revised agreement stated, in relevant part, that Mzekewe's

7

representation might include "getting an accounting of funds ... from VA fiduciary ... removing VA fiduciary, and making funeral arrangements." The agreement also stated that the representation might also include "mediating and negotiating a settlement ... filing a suit [and] appearing in court ... and performing any other related tasks to serve this expressed service." The agreement went on to state that it "[did] not include any appeal to a higher court" and that if the client "require[d] any legal representation beyond the scope of the aforementioned service or performance (including service pursuant to litigation), a new separate and distinct retainer shall be executed and paid for prior to any representation on that new issue." Under the revised agreement, the client agreed to pay Mzekewe a $3,000 fee and stated that Mzekewe would receive a 40 percent contingency fee. Mzekewe did not discuss probate matters with the client at the time of this agreement.

Mzekewe then filed a federal lawsuit against the Secretary of the Department of Veteran's Affairs, the governor of Georgia, the VA guardian, and a probate court judge. During those proceedings,

the client's disabled veteran brother passed away. It was the client's understanding that the $3,000 he initially paid Mzekewe covered Mzekewe's fee for getting him appointed to administer his brother's estate. Mzekewe informed the client that he must file for letters of administration with consent, or the federal lawsuit could be dismissed.

Ultimately, the federal district court dismissed the federal lawsuit against the VA Secretary based on sovereign immunity grounds and against the governor and the VA guardian because it found that it lacked subject matter jurisdiction. Mzekewe filed a petition for the letters of administration seeking the appointment of the client as administrator of the client's brother's estate, and the client was appointed as such. Mzekewe also appealed the dismissal of the federal case to the United States Court of Appeals for the Eleventh Circuit, which affirmed the federal district court's decision. Thus, no money was awarded or received as a result of the litigation. The VA guardian sought and was awarded $23,811.48 in attorney fees for having to defend the frivolous federal litigation. The VA

9

guardian sent Mzekewe a check for $200,000 as a partial distribution of the client's brother's VA fiduciary account. Mzekewe sent the client, as executor of the client's brother's estate, a distribution letter which demonstrated that his firm was taking $1,400.24 for related expenses as well as attorney fees in the amount of $80,000, which equaled 40 percent of the distributed funds. The letter included a note that "[a]fter all Probate Claims and all Federal Claims ate [sic] completely resolved, any and all monies in the Estate including the Reserve Amount should be distributed to the Legal Heirs as part of their share of the Estate." The letter asked the client to affirm that he was fully satisfied with the legal services provided and that the fees "are fair and reasonable under the circumstances, and authorizes these fees to be paid directly out of the proceeds as indicated." The letter also asked for the client's general approval of the allocation of the funds as set forth in the letter. The client refused to sign and hired an attorney to recover the fees from Mzekewe, but Mzekewe evaded service. The client hired a new attorney to take over the probate matter. Mzekewe

acknowledged via letter and email that his representation of the client had been terminated. When the newly hired attorney called Mzekewe and told him why she was calling, Mzekewe hung up the phone.

In his March 30, 2023, response to the State Bar, Mzekewe stated his belief that the revised fee agreement entitled him to receive the 40 percent contingency fee. Specifically, Mzekewe stated that the revised fee agreement "show[s] that my office was entitled to any facilitated recovery whatsoever from any remedy against any named defendant." Mzekewe contended that he had assisted the client by "recovering $200,000.00 for the Estate from … [the VA guardian], and by filing additional pleadings for an accounting of funds and for the fiduciary's forfeiture and removal."

At the evidentiary hearing, the Bar presented the testimony of an expert witness who specializes in elder law, probate, and veteran's law and who testified to the following. The VA guardian was authorized under OCGA § 29-7-15 to charge a five percent commission for her work as conservator. There is an administrative

11

procedure to challenge a VA fiduciary fee being charged and federal district courts do not have jurisdiction to consider those claims. In probate cases where the only asset is funds being held by a VA fiduciary, attorneys would typically bill hourly because the work is straightforward and simple as it merely entails receiving the money from the fiduciary, placing it in a trust account, and then sending a check to the clients. At most, this work would take two hours. The expert witness was "appalled" by the 40 percent contingency fee in this case. The VA allows a 20 percent contingency fee which can increase to 33 percent if factors, similar to those found in Rule 1.5(a),[12] are met. A commission over 33 percent is presumed unreasonable by the VA.

---

[12] A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
  (3) the fee customarily charged in the locality for similar legal services;
  (4) the amount involved and the results obtained;
  (5) the time limitations imposed by the client or by the circumstances;
  (6) the nature and length of the professional relationship with the client;
  (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(b) *Rule Violations*

Based on this conduct, the Special Master concluded that Mzekewe violated the following rules. Mzekewe violated Rule 1.2(a) because neither of Mzekewe's agreements with the client contemplated probating the client's brother's estate. Mzekewe expanded the scope of his representation without explaining to the client that he believed that he was entitled to 40 percent of whatever funds were distributed to the estate. According to the Special Master, the central problem was not the scope of Mzekewe's representation, but the fee Mzekewe charged and what he did with the funds. The Special Master concluded that the better practice would have been for Mzekewe to enter into a new fee agreement with the client to handle probate matters not directly related to the federal litigation because probate work was not covered by the plain language of the revised agreement.

---

(8) whether the fee is fixed or contingent.

The Special Master concluded that Mzekewe violated Rule 1.4(a)(1) by failing to inform the client that he intended on applying the 40 percent contingency fee as set forth in the revised agreement to the work he did in the probate matter. See *In the Matter of Sneed*, 314 Ga. 506, 507–08 (2022) (concluding that attorney who failed to consult with and obtain consent from client prior to dismissing lawsuit violated Rule 1.4). The Special Master concluded that, had Mzekewe given the client the option, he would undoubtedly have chosen to proceed on an hourly fee basis because no reasonable person would agree to a contingency fee in these circumstances.

Citing *In the Matter of Crowther*, 318 Ga. 277 (2024), the Special Master also found that Mzekewe violated Rule 1.4(a)(4) because Mzekewe evaded service when the client attempted to recover the contingency fee and "hung up on" the client's new attorney and refused to speak with her when she contacted him. See id. at 283 (concluding that attorney's failure to communicate with his client violated Rule 1.4).

The Special Master concluded that Mzekewe violated Rule 1.5(a) by charging a 40 percent contingency fee on a matter that required minimal time, expertise, or skill. See *In the Matter of McDonald*, 319 Ga. 197, 205 (2024) (concluding that attorney charged an unreasonable fee where the fee was excessively large and was not based on any work she had performed). Neither of the agreements directly covered the work Mzekewe completed regarding the estate assets; the contingency fee agreement did not apply to the administration of the estate assets; and there was no recovery in the litigation covered by the contingency fee agreement, which was the condition precedent for Mzekewe to be entitled to that fee. See *Paris v. E. Michael Ruberti, LLC.*, 355 Ga. App. 748, 753 (2020) ("[T]he happening of the contingency is a condition precedent to the right of the attorney to recover for his services, and the precise event which was contemplated must happen." (citation and punctuation omitted)). The estate was already entitled to the distributed funds, and the Bar's expert testified that a much smaller hourly fee would have been appropriate because of the minimal work and time

15

involved. The work here did not require a lawyer with significant experience, reputation, or ability. While Mzekewe might have felt justified in charging the large contingency fee based upon the amount of work he completed regarding the federal litigation, he was not authorized by any agreement or law to charge such a fee. Assuming arguendo the contingency fee did apply, the expert witness testified that a contingency fee in that amount would be presumed to be unreasonable by the VA. 38 CFR § 14.636(f). Compare *In the Matter of McDonald*, 319 Ga. at 205 (an excessively large fee can be per se unreasonable where little work was done).

The Special Master concluded that Mzekewe violated Rule 1.5(b) by failing to communicate to the client the rate or fees that he thought should be charged to administer the estate's assets. Although Mzekewe asserted that the fee dispute should be referred to arbitration, the client never gave his informed consent to such a provision in any agreement with Mzekewe and thus could not be compelled to arbitration. The Special Master concluded that even if Mzekewe's request to arbitrate the dispute could be liberally

16

construed as a defense to the Rule violations, Mzekewe waived the defense because he failed to participate in the hearing. See *In the Matter of Fagan*, 314 Ga. 208, 212 n.1 (2022) (concluding that attorney waived his right to present mitigating evidence when he stated in an email that he was not requesting such a hearing).

The Special Master concluded that Mzekewe violated Rule 1.15(I)(a) and (d) by failing to hold the disputed funds separate from his own and by failing to safeguard the disputed funds. The Special Master noted that although he was initially concerned about the foundation for a violation of Rule 1.15(I)(a) as the funds appeared to have passed through Mzekewe's trust account, he determined that the rules should be read together as part of a lawyer's overall obligation to safeguard clients' or third parties' funds. The Special Master determined that the contingency fee here was in dispute when the client disagreed that the fee was reasonable or earned, and thus Mzekewe was obligated under Rule 1.15(I)(a) and 1.15(I)(d) to keep those funds separate from his own. The Special Master then concluded that Mzekewe had failed to safeguard the funds "as he

17

admittedly converted the $80,000.00 to his own use." See *In the Matter of Arrington*, 314 Ga. 696, 698 (2022) (concluding that attorney violated Rules 1.15(I)(a) and 1.15(I)(b) because he both knowingly failed to keep his personal funds and his clients' funds separate and comingled his clients' funds with his personal funds in his trust account); *McDonald*, 319 Ga. at 206–07, 214 (determining that attorney violated Rule 1.15(I)(d) by commingling a third party's funds with her own; disbursing the funds to herself, her family, and her friends despite not receiving permission to disburse the funds; and failing to promptly return any of the funds until after the party filed a grievance and a federal lawsuit even though the transaction at issue had failed to close).

The Special Master concluded that Mzekewe violated Rule 1.15(II)(b) when he withdrew the funds for his personal use. The Special Master rejected Mzekewe's argument that he had earned the contested amount because the revised agreement did not cover the uncontested state probate matter and the funds were not recovered as part of the federal litigation; rather, the funds already belonged

18

to the client's brother prior to his death. The Special Master noted that Mzekewe had not contested that he converted the funds to his personal use. See *In the Matter of Arrington*, 314 Ga. at 698 (concluding that attorney who withdraws funds from trust account for personal use violates Rule 1.15(Il)(b)).

The Special Master concluded that Mzekewe violated Rule 3.1(b) by pursuing the federal litigation despite being advised by a Fulton County Probate Court staff attorney that the VA Guardian's commission was authorized . The Special Master noted various points during the litigation at which Mzekewe knew or should have known that his claims either lacked subject matter jurisdiction, were barred by sovereign immunity, or simply lacked merit. See *In the Matter of Morales*, 282 Ga. 471, 472 (2007) (determining that the federal action filed by the attorney was unwarranted under the law because it lacked a legal or factual basis and no good faith exception existed because the attorney should have known that if a judge is acting within his judicial authority he is immune from a suit for damages and the lawyer therefore violated Rule 3.1(b)).

19

(c) *ABA Standards*

In considering the appropriate level of discipline, the Special Master considered the American Bar Association Standards for Imposing Lawyer Sanctions (1992) ("ABA Standards"). *In the Matter of Morse*, 266 Ga. 652, 653 (1996). See also ABA Standard 3.0 (when imposing a sanction, a court should consider the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors). In addressing the duties violated, the Special Master determined that Mzekewe violated his duty of competence; his duty to preserve his client's property; his duty to not abuse the legal process; his duty to not make false or misleading communications about his services; his duty to not collect unreasonable fees; and his duty to not engage in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for himself. See ABA Standards 4.11 (failure to preserve client's property), 4.51 (lack of competence), 6.21 (abuse of the legal process), and 7.1 (violation of duties).

The Special Master addressed Mzekewe's mental state, concluding that Mzekewe had knowingly and intentionally converted disputed funds; knowingly pursued a lawsuit which was both unwarranted and unsupported in law, and which was harmful to both the client and the legal system; and that Mzekewe's pursuit of those claims was based on his misunderstanding of law which had previously been explained to him. In assessing the harm caused, the Special Master observed that Mzekewe's needless pursuit of the federal lawsuit had cost his client almost $24,000 in legal fees and likely led to Mzekewe's incorrect assertion that he was entitled to a large contingency fee, which he did not explain to the client and for which he did not receive the client's consent to charge. The Special Master determined that Mzekewe mischaracterized a transfer of assets from the VA guardian pursuant to her fiduciary duties as a "recovery" in order to justify the unreasonable contingency fee he charged.

(i) *Factors in Aggravation*

21

The Special Master also concluded that eight of the eleven aggravating factors set forth in ABA Standard 9.22 applied: prior disciplinary offenses[13]; dishonest or selfish motive; a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary proceedings; refusal to acknowledge the wrongful nature of his conduct; vulnerability of the victims; and indifference to making restitution. See ABA Standard 9.22 (a), (b), (c), (d), (e), (g), (h), and (j).

(ii) *Factors in Mitigation*

The Special Master determined the existence of one possible mitigating factor because, in one of Mzekewe's requests for a continuance of the disciplinary hearing, he had attached a letter from his therapist which stated that Mzekewe suffered from mental

---

[13] The Special Master noted that the State Bar had previously imposed discipline on Mzekewe twice. On September 22, 2015, Mzekewe received an Investigative Panel formal admonishment for taking a fee and not filing an appeal and for having misleading letterhead in violation of Rules 1.3, 7.1, and 7.5. On April 26, 2019, Mzekewe received a confidential reprimand for violating Rules 1.2(a), 1.3, and 1.4 for failing to tell his client about a mediation order and then failing to attend a final hearing resulting in a money judgment against his client. Mzekewe agreed to refund the client for costs, fees, and the judgment in installment payments. Though Mzekewe made the first two payments in that matter, he failed to make the final payment until after the client filed a bar complaint against him.

health conditions. See ABA Standard 9.32(i). The Special Master concluded that, had this evidence been admitted at the evidentiary hearing, it "could have" been a basis for mitigation and placed Mzekewe's actions "in better context," but that Mzekewe had waived his right to present this evidence by failing to appear at the hearing. See *In the Matter of Fagan*, 314 Ga. at 213 n.1.

(d) *The Special Master's Recommended Discipline*

The Special Master concluded that based on the Rules violated, Mzekewe should be disbarred, noting that such a sanction is consistent with prior cases in which an attorney has violated similar Rule provisions. In support of this conclusion, the Special Master cited *In the Matter of Morrison*, 321 Ga. 526 (2025) (accepting voluntary surrender of license from attorney who violated Rules 1.15(I)(a) and 1.15(II)(b) by misappropriating $27,500 of funds, and who had not made restitution and had one instance of prior discipline); *In the Matter of Boyd*, 312 Ga. 282, 284–85 (2021) (concluding that disbarment was appropriate where attorney admitted to collecting a $14,397.50 fee without his client's

knowledge or consent as well as additional fees not customary for the legal services provided and who failed to abide by his client's decisions concerning the representation, failed to pay service providers, and made false statements regarding his entitlement to the unauthorized fees in violation of Rules 1.2, 1.3, 1.4, 1.5, 1.15 (I), 4.1, and 8.4); *In the Matter of Webster*, 318 Ga. 27, 28–29 (2023) (accepting petition for voluntary surrender of license where attorney admitted to failing to safeguard fiduciary funds, maintain complete records of trust account funds, promptly deliver funds to which third persons were entitled, and render a full accounting of funds when requested, as well as to withdrawing funds from a trust account for personal use in violation of Rules 1.15(I)(a) and (c) and 1.15(II)(b) across five client matters).[14]

The Special Master concluded that a lesser sanction would not be appropriate in this case because of Mzekewe's lack of remorse and his denial that he owes restitution, and because of the presence of

---

[14] We note that some of the cases relied upon by the Special Master do not pertain to disbarment and are less persuasive under the circumstances of this case.

numerous aggravating factors. In support of this conclusion, the Special Master contrasted the holdings of *In the Matter of Cook*, 311 Ga. 206, 216–18 (2021) (imposing only public reprimand where lawyer caused "checks [to be] negotiated early such that funds were prematurely transferred from the [firm's] trust account to the firm's operating account before the clients' settlement proceeds had been received" and stipulated to violating trust accounting rules, and who the State Bar alleged to have "made false statements about his knowledge of the situation and his actions during the course of this disciplinary proceeding" because "the evidence did not prove that Cook acted dishonestly, intentionally, or maliciously," no client or third party suffered actual harm, and other mitigating factors were present) and *In the Matter of Favors*, 283 Ga. 588, 589 (2008) (accepting lawyer's petition for voluntary discipline and imposing three year suspension where lawyer violated Rules 1.15(I)(a), 1.15(I)(b), 1.15(II)(b), 8.1(a), and 8.4(a)(4) by misappropriating client funds and lying to OGC and the Investigative Panel but who showed

remorse, made full restitution, had personal problems, was in active counseling, and who had no prior discipline).

(3) *Analysis and Conclusion*

Having carefully reviewed the record, we agree that disbarment is the appropriate sanction under these circumstances. As noted by the Special Master, disbarment is consistent with prior cases in which an attorney violated similar provisions of the GRPC. See *In the Matter of Butler*, 283 Ga. 250, 253 (2008) (disbarring attorney who was found in default, although he still engaged in disciplinary process, for violating Rules 1.15(I)(a), 1.15(II)(b), 8.1, and 8.4(a)(4), where attorney failed to return $3,500 retainer and $50,000 that client entrusted to attorney to hold in a trust account; aggravating circumstances included attorney refusing to acknowledge the wrongful nature of his conduct, having a dishonest or selfish motive, being indifferent to making restitution, and obstructing the disciplinary process). See also *In the Matter of Harris*, 301 Ga. 378, 379–80 (2017) (disbarring attorney who violated Rules 1.15(I) and 1.15(II) by misappropriating trust funds

and commingling those funds with his own and who provided no mitigating explanation of his behavior); *In re Wathen*, 290 Ga. 438, 439 (2012) (disbarring attorney who violated Rules 1.2(a), 1.3, 1.4, 1.15(I)(a), (b), 1.15(II)(a), (b), 1.15 (III)(a), 1.16(d), 8.4(a)(4), and 9.3 by settling a personal injury action for $2,250 without his client's consent and then converted the settlement proceeds to his own use, proffered no mitigating factors, and made no restitution to the client).

Prior to Mzekewe seeking readmission, he must make full restitution to the grievant, and proof of that restitution must be offered to the Court. See *In the Matter of Herbert*, 319 Ga. 881, 884 (2024) (disbarring attorney and imposing the requirement that he "pay restitution to the grievants in the amounts of their losses as set out in the Notices of Discipline" should he seek reinstatement).

Accordingly, it is hereby ordered that the name of Nubiyn Matamalaki Mosi Mzekewe be removed from the rolls of persons

authorized to practice law in the State of Georgia. Mzekewe is reminded of his duties pursuant to Bar Rule 4-219(b).

*Disbarred. All the Justices concur.*